Keith Altman (SBN 257309)
The Law Office of Keith Altman
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48334
(516) 456-5885
kaltman@lawampmmt.com

*Attorneys for Plaintiffs*

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| The Estate of Alexandre Touloudjian, by and through its administrator Ad Prosequendum, Sarkis Touloudjian and Sarkis Touloudjian, in his own right, <br><br> Plaintiff, <br><br> vs. <br><br> Josie Gastelo, in her individual capacity, <br> C. Mahler, in their individual capacity, <br> L.R. Baluso, in their individual capacity, <br> G.C. Alano, in their individual capacity, <br> E. Akanji, in their individual capacity, <br> J.A. Collett, in their individual capacity, <br> Katrina Weilbacher, in her individual capacity, <br> Jinwha Jong, in their individual capacity, <br> Michael Scherbinski, in his individual capacity, <br> Patricia Khoo, in her individual capacity, <br> Chan Nguyen, in their individual capacity, <br> M.J. Garcia, in their individual capacity, <br> R.J. Wern, in their individual capacity, <br> P.J. Fitzpatrick, in their individual capacity, <br> S. Castillo, in their individual capacity, <br> C.W. Kestler, in their individual capacity, <br> J.L. Cavan, in their individual capacity, <br> D.S. Simpson, in their individual capacity, <br> A.L. Gilbert, in their individual capacity, <br> Defendants. | CASE NO:2:20-CV-00520 <br><br> **HON: FERNANDO M. OLGUIN** <br><br><br><br><br><br> **SECOND AMENDED COMPLAINT** <br><br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

**NOW COMES**, Plaintiffs, by and through the Undersigned Counsel, and hereby bring this Second Amended Complaint against Defendants as follows:

## INTRODUCTORY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking damages against Defendants for committing acts under color of law that deprived decedent of his rights secured to him by the Constitution and laws of the United States of America.

2. In particular on January 21, 2018, Defendants violated the rights of decedent Alexandre Touloudjian by failing to keep him in a safe and secure environment where he could be kept free from injury, harm, and death, and by failing to provide him with adequate medical care and attention, in violation of the Eighth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

3. Plaintiff's case arises under the Constitution and laws of the United States, specifically the Eighth and Fourteenth Amendments to the United States Constitution.

4. Plaintiff's suit is authorized by 42 U.S.C. §1983 (allowing suits to correct constitutional violations) and 42 U.S.C. § 1988 (providing for attorney fees and litigation expense-awards).

5. This Court has jurisdiction over Plaintiff's federal constitutional claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3).

6. Venue is proper under 28 U.S.C. § 1391 in that the incident took place in and around the County of San Luis Obispo, California, and upon information and belief, the individual Defendants reside in or around the County of San Luis Obispo, California.

**PARTIES**

7. Plaintiff, Sarkis Touloudjian, is the duly appointed Administrator of the Estate of his late son, Alexandre Touloudjian. Attached to this amended complaint is the Declaration of Sarkis Touloudjian in accordance with § 377.32 of the California Code of Civil Procedure.

8. Josie Gastelo was, at all times material hereto, the Warden of the California Men's Colony, located at Colony Drive, San Luis Obispo, CA 93409. Josie Gastelo continues to serve as the Warden of the California Men's Colony. Defendant Gastelo is sued in her individual capacity and supervisory capacity.

9. C. Mahler is a registered nurse with suicide precaution duties working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Nurse Mahler was responsible for monitoring Alexandre Touloudjian on the day of his death.  Nurse Mahler is sued in his/her individual capacity.

10. L. R. Baluso is a registered nurse with suicide prevention duties working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Nurse Baluso was responsible for monitoring Alexandre Touloudjian on the day of his death.  Nurse Mahier is sued in his/her individual capacity.

11. G.C. Alano is a licensed vocational nurse with suicide prevention duties working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA

93409. Nurse Alano was responsible for monitoring Alexandre Touloudjian on the day of his death. Nurse Alano is sued in his/her individual capacity.

12. E. Akanji is a licensed vocational nurse with suicide prevention duties working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Nurse Akanji was responsible for monitoring Alexandre Touloudjian on the day of his death. Nurse Akanji is sued in his/her individual capacity.

13. J.A. Collett is a registered nurse with suicide prevention duties working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Nurse Collett was responsible for monitoring Alexandre Touloudjian on the day of his death. Nurse Collett is sued in his/her individual capacity.

14. Dr. Katrina Weilbacher is a psychologist working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Dr. Weilbacher was partially responsible for the treatment of Alexandre Touloudjian in the days before his death. Dr. Weilbacher is sued in her individual capacity.

15. Dr. Jinhwa Jong is a psychologist working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Dr. Jong was partially responsible for the treatment of Alexandre Touloudjian in the days before his death. Dr. Jong is sued in his individual capacity.

16. Dr. Michael Scherbinski is a psychologist working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Dr. Scherbinski was partially responsible for the treatment of Alexandre Touloudjian in the days before his death. Dr. Scherbinski is sued in his individual capacity.

17. Dr. Patricia Khoo is a psychiatrist working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Dr. Khoo was partially responsible for the treatment of Alexandre Touloudjian in the days before his death. Dr. Khoo is sued in her individual capacity.

18. Dr. Chan Nguyen is a psychiatrist working at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Dr. Nguyen was partially responsible for the treatment of Alexandre Touloudjian in the days before his death. Dr. Nguyen is sued in his individual capacity.

19. Defendants Mahler, Baluso, Alano, Akanji, Collett, Weilbacher, Jong, Khoo, and Nguyen are collectively known as the "Medical Defendants."

20. M.J. Garcia is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Garcia was on duty in the ward where Alexandre Touloudjian was house on the day of death. Officer Garcia is sued in their individual capacity.

21. R.J. Wern is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Wern was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Wern is sued in their individual capacity.

22. P.J. Fitzpatrick is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Fitzpatrick was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Fitzpatrick is sued in their individual capacity.

23. S. Castillo is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Castillo was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Castillo is sued in their individual capacity.

24. C.W. Kestler is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Kestler was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Kestler is sued in their individual capacity.

25. J.L. Cavan is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Cavan was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Cavan is sued in their individual capacity.

26. D.S. Simpson is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Simpson was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Simpson is sued in their individual capacity.

27. A.L. Gilbert is a corrections officer at the California Men's Colony, located at Colony Drive, Sam Luis Obispo, CA 93409. Officer Gilbert was on duty in the ward where Alexandre Touloudjian was housed on the day of his death. Officer Gilbert is sued in their individual capacity.

28. Officers Garcia, Wern, Fitzpatrick, Castillo, Kestler, Cavan, Simpson, and Gilbert are collectively known as the "Officer Defendants."

**FACTUAL ALLEGATIONS**

29. Plaintiff's Decedent, Alexandre Touloudjian, date of birth of January 27, 1993, was initially brought to the California Men's Colony to serve a three-year term of imprisonment following his conviction for an assault. At the time of his death, the Decedent had completed two years of his aforesaid sentence and had approximately one year remaining.

30. On January 12, 2018, Alexandre Touloudjian was admitted to the Mental Health Division at CCHCS for suicidal precautions and psychiatric treatment.

31. Alexandre Touloudjian previously exhibited a history of suicidal attempts while incarcerated. By way of example, several days before this incident, the Decedent attempted to jump from the second tier of the prison in a suicide attempt.

32. On January 11, 2018 Touloudjian was placed on suicide watch by Defendant Psychologist Katrina Weilbacher and was prescribed safety precautions including a safety smock, a safety mattress, a safety blanket and tooth powder.

33. Shortly Before his death, the orders for the safety smock, safety mattress, and safety blanket were cancelled.

34. A history and physical examination of Alexandre Touloudjian was conducted on January 13, 2018 at 9:57 a.m.

35. Alexandre Touloudjian was diagnosed with undifferentiated schizophrenia no later than June 14, 2017. He was then started on Risperdal, an antipsychotic medication.

36. The Decedent had also been prescribed Versed 7, a sedation medication, which was administered to him by CCHCS staff.

37. Nevertheless, before his death, the Decedent had been taken off Versed 7 and placed on apnea protocol by CCHCS doctors.

38. Alexandre Touloudjian attempted suicide sometime before 1:45 p.m. on January 21, 2018.

39. On the day of his death, Touloudjian refused to take his prescribed medicine risperidone.

40. On that date, Alexandre Touloudjian was housed in a single-person prison cell in a mental health crisis unit of the California Men's Colony and was not in a protective smock.

41. Alexandre Touloudjian was found there with "2 bags of crackers," and carrots stuffed down his throat.

42. According to one report, Alexandre Touloudjian had been observed fifteen (15) minutes before his death.

43. One official record of the California Men's Colony, indicate that Alexandre Touloudjian had been checked at 1:33 p.m., and his suicide was observed at 1:45 p.m.

44. The Mental Health records of the California Men's Colony indicate otherwise. While observations were to be made on approximately 11 minute intervals with a leeway of 4 minutes, the records indicate that on the day of his death, orders for his observations were issued but were later marked as "discontinued" and not as "completed." Thus, the records show that Touloudjian was not observed at all on the day of his death.

45. The official correctional records also indicate that the down time could have been as long as twelve (12) minutes before C.P.R. was initiated at 1:47 p.m.

46. When found, Alexandre was pulseless and apneic, indicating that he had been anoxic (without oxygen) for some time, at least four (4) minutes.

47. Alexandre Touloudjian was transferred to Dignity Health, French Hospital Medical Center, San Luis Obispo, CA, under the care of Thomas Vendegna, M.D. He was documented to have severe brain damage.

48. Dr. Vendegna had difficulty believing the official account of Alexandre Touloudjian's death. In the admission medical record, Dr. Vendegna wrote, "The details of this event are unclear as I have been told multiple different versions of the event by C.M.C. workers, C.M.C. security guards, E.M.S. and Dr. Ward, the physician at C.M.C. who arrived when the patient was loaded onto the gurney."

49. Alexandre Touloudjian died of severe brain damage on January 29, 2018, after experiencing pain and suffering from the time of his admission at the hospital to near the time of his death.

50. No autopsy was performed on the Decedent.

51. The cause of death was determined to be respiratory failure, severe anoxic brain injury, and asphyxia. The manner of death was determined to be suicide.

### FIRST CLAIM FOR RELIEF

### SUPERVISORY LIABILITY OF DEFENDANT WARDEN GASTELO UNDER 42 U.S.C. § 1983

52. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as is fully set forth herein.

53. At all times relevant hereto, Defendant Gastelo served as Warden of the California Men's Colony in San Luis Obispo, California.

54. Plaintiff is informed, believes and therefore alleges that on January 21, 2018, Defendant Gastelo was aware of, should have been aware of, and/or had actual knowledge of the pattern and culture of unconstitutional behavior and deliberate indifference, including the failure to adequately screen and monitor inmates, and the failure to protect inmates from injury, harm or death by staff, employees and/or corrections officers at Defendant California Men's Colony.

55. As such, Defendant Gastelo not only directed, encouraged, tolerated, and consented to this behavior, but was deliberately indifferent to the likelihood that her staff, employees and/or corrections officers would fail to monitor inmates properly and protect inmates from injury, harm or death at the California Men's Colony.

56. Defendant Gastelo developed policies and/or customs and/or engaged in practices that caused the deprivation of defendant Alexandre Touloudjian's constitutional rights.

57. Said policies or practices were inherently deficient, which caused the death of Alexandre Touloudjian.

58. Defendant Gastelo recklessly, and/or intentionally acted or failed to act in the following non-exclusive manner:

   a. failed to properly train and supervise the Officer Defendants and the Medical Defendants concerning adequately screening inmates for suicidal tendencies and other psychological problems;

    b.    failed to train and supervise the Officer Defendants and the Medical Defendants properly to adequately screen and monitor inmates, particularly those with a prior history of mental health issues at the California Men's Colony;

    c.    failed to properly train and supervise the Officer Defendants and the Medical Defendants to maintain a safe and suitable environment, and to keep inmates safe from injury, harm or death;

    d.    maintained policies and/or customs and engaged in practices that were deliberately indifferent to the constitutional rights of inmates to be adequately screened for suicidal tendencies or other psychological problems; to be appropriately monitored; and to be kept safe from injury, harm, or death.

59.    Defendant Gastelo knew of the above failures, had the authority to change those practices, and chose not to make those changes.

60.    Defendant Gastelo had personal oversight of the safety of prisoners at the California Men's Colony, including Alexandre Touloudjian.

61.    The deliberate indifference of Defendant Gastelo to the need for supervision of her staff, employees and/or corrections officers and as illustrated above was a proximate cause of the constitutional violations suffered by the Decedent Alexandre Touloudjian.

62.    The violation of Alexandre Touloudjian's rights under the United States Constitution was a proximate cause of damage to Plaintiff, thereby entitling

Plaintiff to compensatory damages from Defendant Gastelo in an amount exceeding $1,000,000.

**WHEREFORE**, the Plaintiff, Sarkis Touloudjian, on behalf of the Estate of Alexandre Touloudjian and in his own right, demands judgment against the Defendants for compensatory and punitive damages, counsel fees, and all costs of suit.

### SECOND CLAIM FOR RELIEF

### LIABILITY OF ALL DEFENDANTS FOR FEDERAL CONSTITUTIONAL VIOLATIONS

63. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

64. At all times hereto, Defendants were acting under color of state law as employees of the California Department of Corrections.

65. Each of the Defendants was aware that Alexandre Touloudjian suffered from serious mental illness and had previously attempted suicide.

66. Each of the Defendants was aware that prisoners such as Alexandre Touloudjian were at extreme risk for further self-injurious behavior and needed specific monitoring and protection.

67. At the time of Alexandre Touloudjian's death, each Defendant was aware that Touloudjian needed immediate medical care and failed to summon such care with deliberate indifference to Touloudjian's constitutional rights.

68. Upon information and belief, Defendants had a duty to properly screen Alexandre Touloudjian for any suicidal tendencies, or any other psychological problems.

69. Defendants had a duty to monitor Alexandre Touloudjian and were aware that Alexandre Touloudjian had previously exhibited suicidal tendencies and suffered from significant mental illness.

70. Despite knowledge of Alexandre Touloudjian's suicidal tendencies and significant mental illness, Defendants acted with deliberate indifference to his medical needs and failed to take steps to protect Decedent from intentional self-harm.

71. Defendants acted contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Alexandre Touloudjian of his rights, privileges, and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

72. Specifically, the Medical Defendants were aware of Touloudjian's suicidal potential and knowing that he was at a high risk of a suicidal event, acted with deliberate indifference by not ensuring that the proper precautions were taken, not observing Touloudjian as ordered, and allowing the instruments of Tououdjian's suicide into his cell.

73. Specifically, the Officer Defendants were aware of Touloudjian's suicidal potential and knowing that he was at a high risk of a suicidal event, acted with deliberate indifference by not monitoring Touloudjian as required.

74. The above-described acts and omissions by Defendants demonstrated deliberate indifference to and a conscious disregard for the psychological needs, medical requirements, and the overall safety of Alexandre Touloudjian, of which they were aware, or should have been aware.

75. The actions of Defendants, as set forth above, violated the late Alexandre Touloudjian's rights under the Eighth and Fourteenth Amendments to be incarcerated in a safe and suitable environment, and to be safe from injury, harm or death while incarcerated at the California Men's Colony.

76. The violations of Alexandre Touloudjian's rights under the United States Constitution were the fatal injury to Plaintiff's Decedent, thereby entitling Plaintiff to compensatory damages from Defendants in their individual capacities in an amount exceeding $1,000,000.

77. The actions of Defendants in their individual capacities were intentional, malicious, willful, wanton, and/or in reckless disregard of Plaintiff's federally protected rights, therefore entitling Plaintiff to an award of punitive damages.

78. Plaintiff is entitled to recover punitive damages against Defendants in their individual capacities in an amount greater than $1,000,000.

79. Plaintiff is entitled to recover reasonable attorney's fees and the costs and expenses of this action.

**WHEREFORE**, the Plaintiff, Sarkis Touloudjian, on behalf of the Estate of Alexandre Touloudjian, and in his own right, demands judgment against the Defendants for compensatory and punitive damages, counsel fees, and all costs of suit.

### THIRD CLAIM FOR RELIEF

### WRONGFUL DEATH
### AGAINST ALL DEFENDANTS

80. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

81. Each Defendant had specific knowledge of Alexandre Touloudjian, his mental health, and his previous suicide attempts.

82. Under the U.S. Constitution, because Defendants knew about Alexandre Touloudjian's mental health and prior suicide attempts, Defendants were required to protect Touloudjian from self-harm.

83. Defendants failed to protect Touloudjian with deliberate indifference to his constitutional rights and this violation resulting in Touloudjian's death.

84. The Defendants' deliberate indifference to Alexandre Touloudjian's rights caused the death of Alexandre Touloudjian.

85. As a direct and proximate result of Defendants' violations of Touloudjian's constitutional rights, Alexandre Touloudjian and the beneficiaries of Alexandre Touloudjian have sustained pecuniary loss, economic damages and loss, mental anguish, emotional pain and suffering, pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of parental care, loss of advice, loss of counsel, loss of training, loss of guidance, loss of education and loss of filial care.

**WHEREFORE**, the Plaintiff, Sarkis Touloudjian, as Administrator of the Estate of Alexandre Touloudjian, hereby demands judgment against Defendants for the wrongful death of Alexandre Touloudjian for economic and non-economic damages, compensatory damages, plus costs, prejudgment interest, post-judgment interest, and counsel fees.

### FOURTH CLAIM FOR RELIEF

### SURVIVAL ACTION
### AGAINST ALL DEFENDANTS

86. The allegations set forth in all previous paragraphs of the complaint are incorporated by reference as if fully set forth herein.

87. Each Defendant had specific knowledge of Alexandre Touloudjian, his mental health, and his previous suicide attempts.

88. Under the U.S. Constitution, because Defendants knew about Alexandre Touloudjian's mental health and prior suicide attempts, Defendants were required to protect Touloudjian from self-harm.

89. Defendants failed to protect Touloudjian with deliberate indifference to his constitutional rights and this violation resulting in Touloudjian's death.

90. The Defendants' deliberate indifference to Alexandre Touloudjian's rights caused the death of Alexandre Touloudjian.

91. As a direct and proximate result of Defendants' violations of Touloudjian's constitutional rights as described above, decedent Alexandre Touloudjian suffered fright and conscious pain and suffering during the period before he was discovered in his jail cell until his death.

92. As a direct and proximate result of Defendants' violations of Touloudjian's constitutional rights as described above, the Estate of Alexandre Touloudjian incurred funeral expenses and medical bills.

93. Plaintiff brings a survivor action pursuant to applicable law against the Defendants for the aforementioned expenses, conscious pain and suffering, and fright suffered by decedent Alexandre Touloudjian.

**WHEREFORE**, the Plaintiff Sarkis Touloudjian as Administrator of the Estate of Alexandre Touloudjian, hereby demands judgment against the Defendants for the

survival claims of the Decedent, for economic and non-economic damages, compensatory damages, plus costs, prejudgment interest, and post-judgment interest and counsel fees.

**JURY DEMAND**

The Plaintiff hereby demands trial by jury.

                                              Respectfully Submitted,

                                              Law Offices of Keith Altman

Dated: November 30, 2020                 By:  */s/ Keith Altman*
      Farmington Hills, Michigan                      Keith Altman (SBN 257309)
                                                        The Law Office of Keith Altman
                                                          33228 W 12 Mile Road, Suite 375
                                                          Farmington Hills, MI 48334
                                                          (516) 456-5885
                                                          kaltman@lawampmmt.com

**CERTIFICATE OF SERVICE**

Undersigned hereby states that on November 30, 2020 he caused the foregoing document to be filed electronically with the United States District Court and that a copy of said document was sent to all counsel of record through the CM/ECF system.

/s/ Keith Altman