1   XAVIER BECERRA
    Attorney General of California
2   JON S. ALLIN
    Supervising Deputy Attorney General
3   DAVID C. GOODWIN
    Deputy Attorney General
4   State Bar No. 283322
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone:  (916) 210-7342
      Fax:  (916) 324-5205
7     E-mail:  David.Goodwin@doj.ca.gov
    *Attorneys for Defendant Gastelo*

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                    LOS ANGELES DIVISION

12

| | |
|---|---|
| 13 **ESTATE OF ALEXANDRE TOULOUDJIAN, et al.,** | 2:20-cv-0520-FMO-KLS |
| 15 Plaintiff, | **DEFENDANT GASTELO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| 16 **v.** | |
| 17 **CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,** | |
| 19 Defendants. | Date:        1/14/2021<br>Time:        10:00 a.m.<br>Courtroom:  6D<br>Judge:        Hon. Fernando M. Olguin<br>Trial Date:  None set<br>Action Filed: 1/17/2020 |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................ 1

Factual Allegations ................................................................................................ 2

Claims .................................................................................................................... 4

Argument ............................................................................................................... 4

    I.     Legal Standards for Motions to Dismiss ............................................. 4

    II.    The SAC Fails to State a Claim Based on Supervisory Liability. ........ 6

          A.    Legal Standards for Supervisory Liability Claims. ................... 6

          B.    The SAC Fails to Plead Facts to Support a Claim Based
               on Supervisory Liability. ......................................................... 7

    III.   The SAC Fails to State a Claim for Deliberate Indifference. .............. 9

          A.    Legal Standards for Deliberate Indifference Claims. ................ 9

          B.    The SAC Fails to State a Claim Based on Deliberate
               Indifference. ......................................................................... 10

    IV.   The Third Claim (Wrongful Death) Is Not Cognizable Under 42
          U.S.C. § 1983. ................................................................................ 11

    V.    The SAC Fails to State Any Claim Because Gastelo Is Entitled
          to Qualified Immunity ...................................................................... 12

          A.    Legal Standards for Qualified Immunity ................................ 12

          B.    Gastelo Is Entitled to Qualified Immunity Because the
               SAC Fails to State a Claim and Because the Law
               Regarding Prison Suicide Prevention Policies Was
               Unsettled in 2018. ................................................................ 13

Conclusion .......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adams v. Johnson*
    355 F.3d 1179 (9th Cir. 2004)..................................................................5

*Albright v. Oliver*
    510 U.S. 266 (1994) ...............................................................................11

*Ashcroft v. al-Kidd*
    131 S. Ct. 2074 (2011) ...........................................................................13

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..............................................................................5, 7

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990)....................................................................5

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) .................................................................................5

*Clouthier v. Cty. of Contra Costa*
    591 F.3d 1232 (9th Cir. 2010)....................................................15, 16, 17

*Conn v. City of Reno*
    591 F.3d 1081 (9th Cir. 2010)...........................................................16, 17

*Cty. of Sacramento v. Lewis*
    523 U.S. 833 (1998) ...............................................................................11

*Estelle v. Gamble*
    429 U.S. 97 (1976) ...................................................................................9

*Farmer v. Brennan*
    511 U.S. 825 (1994) .........................................................................6, 9, 11

*Hartmann v. Cal. Dep't of Corrs. & Rehab.*
    707 F.3d 1114 (9th Cir. 2013.)..................................................................4

**TABLE OF AUTHORITIES**
(continued)

Page

*Hernandez-Cortina v. Cty. of Riverside*
No. 5:18-cv-1579-DDP-SPx, 2019 WL 403957 (C.D. Cal. Jan. 30, 2019) ................................................................................................. 12

*Horton v. City of Santa Maria*
915 F.3d 592 (9th Cir. 2020) .............................................. 13, 16, 17

*Hydrick v. Hunter*
669 F.3d 937 (9th Cir. 2012) ...................................................... 7, 8

*Ivey v. Board of Regents of the Univ. of Alaska*
673 F.2d 266 (9th Cir. 1982) ........................................................... 5

*J.K.J. v. City of San Diego*
No. 19-cv-2123-CAB-RBB, 2020 WL 738178 (S.D. Cal. Feb. 13, 2020) .......................................................................................... 12

*Jett v. Penner*
439 F.3d 1091 (9th Cir. 2006) ......................................................... 9

*Jones v. Community Redevelopment Agency*
733 F.2d 646 (9th Cir. 1984) ........................................................... 5

*Lemire v. CDCR*
726 F.3d 1062 (9th Cir. 2013) ......................................................... 9

*M.B. by and through Beverly v. California*
No. 2:17-cv-02395-WBS-DB, 2019 WL 498994 (E.D. Cal. Feb. 8, 2019) .......................................................................................... 17

*Moss v. United States Secret Serv.*
711 F.3d 941 (9th Cir. 2013) ........................................................... 8

*Pearson v. Callahan*
555 U.S. 223 (2009) ................................................................ 12, 13

*Pena v. Gardner*
976 F.2d 469 (9th Cir. 1992) ........................................................... 5

*Rodriguez v. Cty. of Los Angeles*
891 F.3d 776 (9th Cir. 2018) ........................................................... 6

iii

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*Saucier v. Katz*
   533 U.S. 194 (2001) .................................................................. 13

*Simmons v. Navajo Cty. Ariz.*
   609 F.3d 1011 (9th Cir. 2010) .................................................... 9

*Sjurset v. Button*
   810 F.3d 609 (9th Cir. 2015) ...................................................... 13

*Starr v. Baca*
   652 F.3d 1202 (9th Cir. 2011) .................................................. 5, 8

*Tarabochia v. Adkins*
   766 F.3d 1115 (9th Cir. 2014) .................................................... 13

*Taylor v. Barkes*
   135 S. Ct. 2042 (2015) .......................................................... 13, 15

*Taylor v. Barkes*
   575 U.S. 822 (2015) .................................................................. 15

*Toguchi v. Chung*
   391 F.3d 1051 (9th Cir. 2004) ...................................................... 9

*Wilhelm v. Rotman*
   680 F.3d 1113 (9th Cir. 2012) ...................................................... 9

*Wilson v. Seiter*
   501 U.S. 294 (1991) .................................................................... 6

**STATUTES**

42 U.S.C. § 1983 ............................................................ 2, 6, 11, 12

**CONSTITUTIONAL PROVISIONS**

United States Constitution .......................................................... 4, 11
   Eighth Amendment .............................................................. *passim*
   Fourteenth Amendment ...................................................... 4, 9, 10, 11

**TABLE OF AUTHORITIES**
**(continued)**

Page

**COURT RULES**

Federal Rule of Civil Procedure
   Rule 8.................................................................................................................5
   Rule 12(b)(6) ..............................................................................................1, 4

# INTRODUCTION

This action is brought by Sarkis Touloudjian, the father of Decedent Alexandre Touloudjian, on behalf of himself and the Decedent's estate. Plaintiffs allege that Decedent was incarcerated at California Men's Colony (CMC) and that he attempted suicide while in the care of CMC's mental health unit. Decedent was transferred to a hospital, where he died eight days later. Plaintiffs allege that CMC Warden Gastelo is liable for Decedent's death because Decedent was not provided a safe and secure environment, and was not provided adequate medical attention. The Court should dismiss Gastelo under Federal Rule of Civil Procedure 12(b)(6) because the second amended complaint (SAC, ECF No. 44) fails to state a cognizable claim. The facts alleged in the SAC—as they relate to Gastelo—are identical to those alleged in the original complaint and the first amended complaint (FAC). Critically, there are still no facts connecting Gastelo to Decedent's attempted suicide.

The first claim (supervisory liability) fails because there are no allegations that Gastelo was personally involved in any constitutional deprivation, nor is there a causal connection between any alleged wrongful conduct and a constitutional violation. The SAC only makes sweeping and conclusory contentions that Gastelo must have enacted unspecified policies that led to Decedent's suicide. This is insufficient to state a claim based on supervisory liability.

The second claim (deliberate indifference) and fourth claim (survival action based on deliberate indifference) similarly fail because there are no specific facts that Gastelo was aware of any objectively serious risk and disregarded that risk. In fact, the SAC alleges that Decedent had earlier attempted suicide, which led to his being transferred into CMC's mental health unit, placed in a cell by himself, diagnosed with and treated for schizophrenia, and prescribed medication. After staff observed Decedent lying on the ground in his cell, they entered Decedent's cell, initiated life-saving measures, and transferred him to a local hospital.

1    Additionally, since these claims lump Gastelo with the other custody and medical

2    staff, there are no allegations explaining the scope or extent of each defendant's

3    role relative to the others.  Finally, there are no facts that identify any specific

4    suicide prevention policies at issue or that connect those policies to Gastelo.

5        The third claim (wrongful death) fails because wrongful death claims are not

6    cognizable under 42 U.S.C. § 1983.

7        Finally, Gastelo is entitled to qualified immunity on all claims, because the

8    state of the law regarding prison suicide prevention policies was unsettled at the

9    time of Decedent's death.  For all these reasons, and because the claims cannot be

10   cured by further amendment, the SAC should dismissed with prejudice.

11                           **FACTUAL ALLEGATIONS**

12       Decedent was born on January 27, 1993.  (SAC ¶ 29.)  He was brought to

13   CMC to serve a three-year term of imprisonment.  (*Id.*)  At the time of his death, he

14   had approximately one year remaining on his sentence.  (*Id.*)

15       On January 12, 2018, Decedent was admitted to the mental health program

16   administered by the California Correctional Health Care Services (CCHCS).  (*Id.*

17   ¶ 30.)  Decedent had previously exhibited suicidal attempts during his

18   incarceration.  (*Id.* ¶ 31.)  Several days before his admission to the mental health

19   unit, Decedent had attempted to jump from the second tier of the prison in a suicide

20   attempt.  (*Id.*)

21       On January 11, 2018, Decedent was placed on suicide watch by a

22   psychologist, and prescribed safety precautions including a safety smock, safety

23   mattress, safety blanket, and tooth powder.  (*Id.* ¶ 32.)  Shortly before his ultimately

24   fatal suicide attempt, the orders for the safety smock, safety mattress, and safety

25   blanket were cancelled.  (*Id.* ¶ 33.)

26       On January 13, 2018, a history and physical examination of the Decedent was

27   conducted.  (*Id.* ¶ 34.)  He was diagnosed with undifferentiated schizophrenia the

28   previous year on June 14, 2017, and was prescribed Risperdal (antipsychotic

medication).  (*Id*. ¶ 35.)  He was also prescribed Versed 7 (sedation medication), which was administered by CCHCS staff.  (*Id*. ¶ 36.)  Before his death, CCHCS physicians took Decedent off of Versed 7 and placed him on apnea protocols.  (*Id*. ¶ 37.)

Decedent attempted suicide sometime before 1:45 p.m. on January 21, 2018. (*Id*. ¶ 38.)  Decedent had refused to take his prescribed medication risperidone that day.  (*Id*. ¶ 39.)  He was housed in a single-person cell in the mental health crisis unit at CMC.  (*Id*. ¶ 40.)  He was not wearing a protective smock.  (*Id.*)  Decedent was found with "2 bags of crackers" and carrots stuffed down his throat.  (*Id*. ¶ 41.) According to a report, he had been observed fifteen minutes before his attempted suicide.  (*Id*. ¶ 42.)  The official records indicate that Decedent had been checked at 1:33 p.m., and that his attempted suicide was observed at 1:45 p.m.  (*Id*. ¶ 43.) However, the mental health records indicate otherwise, because although observations were to be made on approximately 11 minute intervals with a leeway of 4 minutes, the records indicate that the observations issued were marked "discontinued" and not as "completed."  (*Id.* ¶ 44.)  Plaintiffs conclude, without further factual support, that these mental health records show Touloudjian was not observed at all on the day of his death.  (*Id.*)

Other official records indicate that the down time could have been as long as twelve minutes before CPR was first initiated at 1:47 p.m.  (*Id*. ¶ 45.)  When he was found, Decedent was pulseless and apneic, indicating that he had been anoxic (without oxygen) for at least four minutes.  (*Id*. ¶ 46.)

Decedent was transported to a Dignity Health hospital in San Luis Obispo. (*Id*. ¶ 47.)  He was documented there to have severe brain damage.  (*Id.*)  The assigned physician had difficulty believing the official account of his death.  (*Id*. ¶ 48.)  In the admission medical record, they wrote, "The details of this event are unclear as I have been told multiple different versions of the event by CMC

1  workers, CMC security guards, EMS and Dr. Ward, the physician at CMC who

2  arrived when the patient was loaded onto the gurney." (*Id.*)

3      Decedent died from severe brain damage on January 29, 2018, after

4  experiencing pain and suffering from the time of his admission at the hospital to

5  near the time of his death. (*Id.* ¶ 49.) No autopsy was performed. (*Id.* ¶ 50.) The

6  cause of death was determined to be respiratory failure, severe anoxic brain injury,

7  and asphyxia. (*Id.* ¶ 51.) The manner of death was determined to be suicide. (*Id.*)

8  **CLAIMS**

9      The first claim for "Supervisory Liability" is made on behalf of Decedent's

10  father and estate against Gastelo for deliberate indifference in violation of

11  unspecified provisions of the United States Constitution. (SAC ¶¶ 52-62.)

12      The second claim for "Federal Constitutional Violations" is made on behalf of

13  Decedent's father and estate against Gastelo and all other defendants for deliberate

14  indifference in violation of the Decedent's rights under the Eighth and Fourteenth

15  Amendments. (*Id.* ¶¶ 63-79.)

16      The third claim for "Wrongful Death" is made on behalf of Decedent's estate

17  against Gastelo and all other defendants for deliberate indifference in violation of

18  unspecified provisions of the United States Constitution. (*Id.* ¶¶ 80-85.)

19      The fourth claim for "Survival Action" is made on behalf of Decedent's estate

20  against Gastelo and all other defendants for deliberate indifference in violation of

21  unspecified provisions of the United States Constitution. (*Id.* ¶¶ 86-93.)

22  **ARGUMENT**

23  **I.**  **LEGAL STANDARDS FOR MOTIONS TO DISMISS.**

24      A complaint may be dismissed for failure to state a claim upon which relief

25  can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the

26  complaint's legal and factual sufficiency. *Hartmann v. Cal. Dep't of Corrs. &*

27  *Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013.) A dismissal under Rule 12(b)(6) is

28  proper where there is either a "lack of a cognizable legal theory" or "the absence of

4

sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its fact." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The interpretation of Federal Rule of Civil Procedure 8 in *Twombly* governs all civil actions, including claims based on state law, in federal court. *Iqbal*, 556 U.S. at 684.

Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). Similarly, vague allegations of official participation in civil-rights violations are not sufficient to defeat a motion to dismiss. *Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). "The plaintiff must 'allege with at least some degree of particularity overt acts which defendants engaged in' that support plaintiff's claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (citations omitted).

/ / /

/ / /

## II.   THE SAC FAILS TO STATE A CLAIM BASED ON SUPERVISORY LIABILITY.

### A.   Legal Standards for Supervisory Liability Claims.

A prison official violates the Eighth Amendment when (1) the deprivation of a right is "objectively, sufficiently serious," and (2) the prison official has a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  In prison-conditions cases, that state of mind is deliberate indifference to inmate health or safety.  *Id.* at 837.  A supervisor cannot be held liable "for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).

In the Ninth Circuit, a supervisory official may be liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (citing *Keates v. Kolie*, 883 F.3d 1228, 1242-43 (9th Cir. 2018) and *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id.* (citation omitted).  "Thus, a supervisory may 'be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  *Id.* (citation omitted).

/ / /

1

## B.   The SAC Fails to Plead Facts to Support a Claim Based on Supervisory Liability.

2

3        For the first claim, the SAC alleges that Gastelo "was aware of, should have

4   been aware of, and/or had actual knowledge of the pattern and culture of

5   unconstitutional behavior and deliberate indifference, including the failure to

6   adequately screen and monitor inmates, and the failure to protect inmates from

7   injury, harm, or death by staff, employees and/or corrections officers."  (SAC ¶ 54.)

8   The SAC also alleges that Gastelo was deliberately indifferent to this behavior, and

9   developed policies and engaged in practices that lead to Decedent's death.  (*Id.*

10  ¶¶ 55-56.)  The SAC further alleges that Gastelo failed to properly train and

11  supervise subordinate employees concerning adequate screening, adequate

12  monitoring, and maintaining a safe environment.  (*Id.* ¶ 58.)  These contentions

13  were the same as those made against the dismissed entities and Gastelo in the

14  original Complaint (*see* Compl. at ¶¶ 37-40, 55-57) and the FAC (*see* FAC at ¶¶ 32-

15  36).

16        The SAC fails to state a claim for supervisory liability for two reasons.  First,

17  the SAC does not allege that Gastelo was personally involved in the events leading

18  up to Decedent's suicide attempt on January 21, 2018.  (*See* SAC ¶¶ 29-51.)

19  Second, the SAC does not plead any specific facts showing that Gastelo set in

20  motion a series of acts by others, or knowingly refused to stop a series of acts by

21  others, which Gastelo knew or reasonably should have known would cause others

22  to inflict an injury.  (*Id.*)  In fact, the SAC fails to allege any specific facts

23  connecting Gastelo to the events surrounding Decedent's suicide attempt

24  whatsoever.  The only specific fact alleged is that Gastelo was the warden at the

25  relevant time.  (*Id.* ¶ 8.)  The SAC's allegations in the first claim consist only of the

26  type of conclusory assertions which are insufficient to state a claim.  *See Ashcroft v.*

27  *Iqbal*, 556 U.S. 662, 680-81 (2009); *Hydrick v. Hunter*, 669 F.3d 937, 941-42 (9th

28  Cir. 2012).

1    In *Starr v. Baca*, the Ninth Circuit found supervisory liability after

2  "tedious[ly]" recounting the "many allegations in the complaint detailing what

3  Sheriff Baca knew or should have known, and what Sheriff Baca failed to do."

4  *Starr*, 652 F.3d at 1209.  Those allegations included in-depth details of letters,

5  weekly records, memoranda, and incident reports that Sheriff Baca himself

6  received.  *Id.* at 1209-11; *see also Hydrick*, 669 F.3d at 940-41 (discussing *Starr*).

7    Here, there are no allegations that Gastelo had any direct involvement with

8  Decedent or the events leading up to Decedent's attempted suicide.  The SAC

9  merely makes conclusory generalizations regarding unidentified policies, customs,

10  and practices.  (*See* SAC ¶¶ 54-61.)  The SAC fails to state a claim because it does

11  not describe what those policy decisions are, does not describe Gastelo's role in

12  establishing and implementing the policies, and does not describe her awareness

13  that those policies would result in Decedent's death.  This is insufficient to state a

14  claim because Plaintiffs must allege sufficient facts relating to a specific policy or

15  custom, or defendant's knowledge of and acquiescence in the unconstitutional

16  conduct of her subordinates.  *See Hydrick*, 669 F.3d at 942 (holding that conclusory

17  allegations of policy are insufficient to survive a motion to dismiss); *see also Moss*

18  *v. United States Secret Serv.*, 711 F.3d 941, 968 (9th Cir. 2013) (holding that

19  plaintiffs failed to allege facts showing that the constitutional violation was due to

20  "improper training, supervision, instruction and discipline") (reversed on other

21  grounds in *Wood v. Moss*, 134 S. Ct. 2056 (2014)).

22    There are also no allegations that Gastelo was actually aware of any

23  unconstitutional conduct of other subordinate correctional officials at CMC.  Unlike

24  in *Starr*, which recounted specific, in-depth details of letters, weekly records,

25  memoranda, and incident reports that the supervisor received, the SAC here fails to

26  provide any details identifying the extent to which Gastelo was aware of any

27  deficiencies that could have caused or failed to prevent Decedent's suicide attempt.

28  Rather, the SAC alleges that Decedent was transferred to the mental health unit of

1   CMC and provided treatment by licensed medical and mental health staff.

2   Accordingly, the SAC fails to state a claim based on Gastelo's supervisory liability.

3   **III.  THE SAC FAILS TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE.**

4       The analysis for the second claim (violation of Decedent's Eighth and

5   Fourteenth Amendment rights based on deliberate indifference), third claim

6   ("wrongful death" based on deliberate indifference) and fourth claim ("survival

7   action" based on deliberate indifference) is similar to the same analysis for the first

8   claim (supervisory liability), discussed above.

9       **A.    Legal Standards for Deliberate Indifference Claims.**

10      The Eighth Amendment imposes a duty on prison officials to ensure inmates

11  receive adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);

12  *Farmer*, 511 U.S. at 832.  "In the Ninth Circuit, the test for deliberate indifference

13  consists of two parts.  First, the plaintiff must show a serious medical need by

14  demonstrating that failure to treat a prisoner's condition could result in further

15  significant injury or the unnecessary and wanton infliction of pain.  Second, the

16  plaintiff must show the defendant's response to the need was deliberately

17  indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or

18  failure to respond to a prisoner's pain or possible medical need and (b) harm caused

19  by the indifference."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); a*ccord*

20  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Lemire v. CDCR*, 726

21  F.3d 1062, 1081 (9th Cir. 2013).

22      "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty.*

23  *Ariz.,* 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060

24  (9th Cir. 2004).  "The indifference to a prisoner's medical needs must be

25  substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not

26  support [an Eighth Amendment claim.]  Even gross negligence is insufficient to

27  establish deliberate indifference to serious medical needs."  *Lemire*, 726 F.3d at

28  1081–82 (2013).

## B.   The SAC Fails to State a Claim Based on Deliberate Indifference.

The SAC alleges that each of the Defendants were aware that Decedent suffered from serious mental illness, and had previously attempted suicide.  (SAC ¶¶ 65, 81, 87.)  Defendants were also aware that prisoners like Decedent "were at extreme risk for further self-injurious behavior and needed specific monitoring and protection."  (*Id.* ¶ 66.)  Defendants were aware that Decedent needed immediate medical care and failed to summon care.  (*Id.* ¶ 67.)  Defendants had a duty to properly screen Decedent for suicidal tendencies or psychological problems, had a duty to monitor Decedent, and acted with deliberate indifference by failing to take steps to protect Decedent from self-harm.  (*Id.* ¶¶ 68-69.)  This was done with deliberate indifference to Decedent's psychological needs, medical requirements, and overall safety, and violated the Eighth and Fourteenth Amendments.  (*Id.* at ¶¶ 71, 74-75, 83-84, 89-90.)

The SAC fails to state a claim for general deliberate indifference for similar reasons as the supervisory liability claim.  There are no specific facts showing that Gastelo—the warden—was aware of any objectively serious risk and disregarded that risk.  Even if she had known about Decedent, the allegations show that after Decedent's first attempted suicide, he was re-housed in the CMC mental health unit, examined, treated for schizophrenia, prescribed medications, and placed on "apnea protocols."  (*Id.* ¶¶ 30, 34-37.)  On the day of the attempted suicide, he was in a single-person cell, and refused to take his medication.  (*Id.* ¶¶ 39-40.)  According to two records, Decent was observed between twelve to fifteen minutes before his suicide attempt.  (*Id.* ¶¶ 42-43.)  After Decedent was observed on the floor, staff initiated C.P.R. and transferred him to a local hospital.  (*Id.* ¶¶ 45, 47.)

While Plaintiffs further allege that other records indicate observation checks were "discontinued" instead of "completed" on the day of the suicide attempt (*id* ¶ 44), there are no facts regarding Gastelo's involvement in that alleged event.  More

10

1   importantly, there are no facts showing that Gastelo was subjectively aware of *any*

2   acute risk and deliberately ignored the risk.  Furthermore, in light of the fact that

3   Gastelo is lumped into the claims with other medical staff members and

4   correctional officers, there also are no allegations explaining the scope or extent of

5   each Defendant's role, relative to the others, which is important in light of the fact

6   that Gastelo is the institution's warden.  Finally, there are no facts connecting any

7   specific suicide-prevention policies to Gastelo.

8        Additionally, to challenge official conduct on substantive due process grounds

9   under the Fourteenth Amendment, if that is Plaintiffs' intent, a plaintiff must show

10  that the defendant's conduct was "so egregious, so outrageous, that it may fairly be

11  said to shock the contemporary conscience."  *Cty. of Sacramento v. Lewis*, 523 U.S.

12  833, 847 n.8 (1998).  However, the deliberate indifference standard under the

13  Eighth Amendment requires that "a person . . . 'consciously disregard[d]' a

14  substantial risk of serious harm."  *Farmer*, 511 U.S. at 839.  As discussed above,

15  there are no specific facts that Gastelo acted with deliberate indifference.  To the

16  extent the claims rely on the Fourteenth Amendment then they must fail.

17  Accordingly, the SAC's claims for deliberate indifference and survival action

18  should be dismissed.

19  **IV.  THE THIRD CLAIM (WRONGFUL DEATH) IS NOT COGNIZABLE UNDER**

20       **42 U.S.C. § 1983.**

21       The third claim purports to be for wrongful death under 42 U.S.C. § 1983.

22  (SAC ¶¶ 1, 80-85.)  However, 42 U.S.C. § 1983 is not a source of substantive

23  rights, and merely provides a method for vindicating specific constitutional rights.

24  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  The first step in any claim brought

25  under 42 U.S.C. § 1983 is to identify the specific constitutional provision allegedly

26  violated.  *Id.*

27       The third claim states that "Under the U.S. Constitution, because Defendants

28  knew about Touloudjian's mental health and prior suicide attempts, Defendants

1   were required to protect Touloudjian from self-harm."  (SAC ¶ 82.)  Further, that

2   "Defendants failed to protect Touloudjian with deliberate indifference to his

3   constitutional rights and this violation resulting in Touloudjian's death."  (*Id.* ¶ 83.)

4        In addition to failing to identify the specific constitutional provision that was

5   violated, the SAC conflates federal survival claims, which are brought on behalf of

6   a decedent or his estate, with wrongful death claims, which are brought on behalf of

7   the decedent's heirs for their own injuries.  *See J.K.J. v. City of San Diego*, No. 19-

8   cv-2123-CAB-RBB, 2020 WL 738178, at *2-3 (S.D. Cal. Feb. 13, 2020).

9   Wrongful death claims are appropriately brought under state law and are not

10  cognizable under 42 U.S.C. § 1983.  *Id.* at *4.  The state law claims that were

11  asserted in the original complaint have been dismissed.  (*Compare* Compl. and

12  FAC.)  Furthermore, "wrongful death actions by a surviving relative cannot be

13  brought under section 1983, as constitutional rights cannot be vicariously asserted."

14  *Hernandez-Cortina v. Cty. of Riverside*, No. 5:18-cv-1579-DDP-SPx, 2019 WL

15  403957, at *3 (C.D. Cal. Jan. 30, 2019).  Accordingly, the third claim for wrongful

16  death should be dismissed.

17  **V.   THE SAC FAILS TO STATE ANY CLAIM BECAUSE GASTELO IS
18       ENTITLED TO QUALIFIED IMMUNITY.**

19       The SAC fails to allege any new facts connecting Gastelo to Decedent's

20  suicide.  The theories of liability are also substantially the same as in the original

21  complaint and the FAC.  Gastelo therefore reincorporates the qualified immunity

22  argument asserted in the previous motions to dismiss.

23       **A.   Legal Standards for Qualified Immunity**

24       Qualified immunity protects government officials from civil liability where

25  "their conduct does not violate clearly established statutory or constitutional rights

26  of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S.

27  223, 231 (2009) (citation omitted).  The doctrine protects "all but the plainly

28

1    incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.

2    Ct. 2074, 2085 (2011) (citation omitted).

3        Qualified immunity is analyzed under a two-prong inquiry: (1) whether the

4    alleged facts violate the Constitution, and (2) if so, whether the constitutional right

5    at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533

6    U.S. 194, 201 (2001).  Courts have discretion to decide which of the two prongs to

7    analyze first. *Pearson*, 555 U.S. at 236.  If the Court finds the constitutional right

8    at issue was not clearly established at the time of the violation, then the officials are

9    entitled to qualified immunity, and the Court does not need to analyze the first

10   prong. *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015).

11       Qualified immunity applies unless, given the available case law at the time,

12   and knowing what defendant knew, a reasonable officer would have understood

13   that the failure to act was unconstitutional. *Horton v. City of Santa Maria*, 915 F.3d

14   592, 600 (9th Cir. 2020).  To overcome qualified immunity, "existing precedent

15   must have placed the statutory or constitutional question beyond debate." *Taylor v.*

16   *Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *al-Kidd*, 563 U.S. at 741).  The

17   plaintiff bears the burden of demonstrating that the constitutional right in question

18   was clearly established at the time officials acted. *Tarabochia v. Adkins*, 766 F.3d

19   1115, 1125 (9th Cir. 2014).

20

21       **B.    Gastelo Is Entitled to Qualified Immunity Because the SAC**
         **Fails to State a Claim and Because the Law Regarding Prison**

22       **Suicide Prevention Policies Was Unsettled in 2018.**

23       The SAC alleges that, several days before the suicide attempt that led to his

24   death, Decedent had attempted suicide by jumping from a second tier in the prison.

25   (SAC ¶ 31)  Decedent was transferred to the mental health division for suicide

26   precautions and psychiatric treatment.  (*Id.* ¶ 30.)  The next day, Decedent

27   underwent a history and physical examination, which included diagnosis of

28   undifferentiated schizophrenia.  (*Id.* ¶¶ 34-35.)  During his time in the mental health

1  division, he was prescribed various medications, and eventually placed on "apnea

2  protocols." (*Id.* ¶¶ 35-37.)

3      On the date of the suicide attempt, Decedent was in a single-person prison

4  cell, in the mental health crisis unit, but not in a protective smock. (*Id.* ¶ 40.) He

5  refused to take his prescribed medication risperidone. (*Id.* ¶ 41.) According to one

6  report, Decedent was observed fifteen minutes before the attempted suicide. (*Id.*

7  ¶ 42.) According to another report, Decedent was observed twelve minutes before

8  the attempted suicide. (*Id.* ¶ 43.) According to other records, Decedent's order for

9  observations every eleven minutes (with a leeway of four minutes) were

10 discontinued the day of his attempted suicide. (*Id.* ¶ 44.) At 1:45 p.m. that day,

11 Decedent was found with food items stuffed down his throat. (*Id.* ¶ 41.) Decedent

12 was pulseless and apneic, indicating that he had been without oxygen for at least

13 four minutes. (*Id.* ¶ 46.) After he was found, CPR was initiated, and Decedent was

14 transferred to an outside hospital. (*Id.* ¶¶ 45, 46-47.)

15     Plaintiffs do not allege specific facts showing that Gastelo was aware of any of

16 these events, had any direct interactions with Decedent, was involved in setting his

17 conditions of confinement or treatment, or had even known Decedent. (*See*

18 *generally* SAC.) For the reasons set forth above, Gastelo is therefore entitled to

19 qualified immunity under *Saucier*'s first prong, because the SAC fails to state a

20 cognizable constitutional claim.

21     Gastelo is also entitled to qualified immunity under *Saucier*'s second prong.

22 The issue presented by the complaint's allegations is whether it was clearly

23 established that a prison warden was required to implement specific suicide

24 prevention protocols for an inmate who was already housed in the prison's mental

25 health division and under the care of mental health professionals, despite the

26 warden's having no knowledge of his case.

27     In June 2015, the Supreme Court addressed a similar case brought against

28 corrections officials, including a warden, involving Eighth Amendment claims for

1    failing to prevent an inmate's suicide.  *Taylor v. Barkes*, 575 U.S. 822 (2015).  The

2    Supreme Court stated:

> No decision of this Court establishes a right to the proper
> implementation of adequate suicide prevention protocols.  No decision
> of this Court even discusses suicide screening or prevention protocols.
> And "to the extent that a 'robust consensus of cases of persuasive
> authority'" in the Courts of Appeals "could itself clearly establish the
> federal right respondent alleges," *City and Cnty. of San Francisco v.
> Sheehan*, 575 U.S. ——, ——, 135 S.Ct. 1765, 1779, —— L.Ed.2d ——
> – (2015), the weight of that authority at the time of Barkes's death
> suggested that such a right did not exist.

*Taylor*, 135 S. Ct. at 2044.  The Supreme Court therefore granted the defendants

qualified immunity.

       Three Ninth Circuit cases have considered prisoner suicide claims.  In

*Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010), *overruled

on other grounds by*, *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir.

2016), the Ninth Circuit determined that "a reasonable mental health professional

could not have thought it was lawful to remove key suicide prevention measures

put in place by a prior Mental Health staff member."  But in this case, Gastelo was

not a mental health professional, and there are no allegations that she removed any

of Decedent's suicide prevention measures.  In fact, the allegations are that

Decedent was under the care of the Mental Health Division for suicidal precautions

and psychiatric treatment; he had a diagnosis of undifferentiated schizoprehnia and

had different medications prescribed; he was housed in a cell by himself in the

mental health unit; and had been most recently observed within twelve to fifteen

minutes before being discovered on the ground.  (SAC ¶¶ 30, 34-40.)  While there

are also allegations that orders for periodic observations were discontinued on the

day of his death, there are no allegations that Gastelo ordered the discontinuation of

those orders, or was in anyway involved with them.  (SAC ¶ 44.)  Further, while

there are allegations that orders for a safety smock, safety mattress, and safety

1   blanket were cancelled, there are no allegations that Gastelo ordered the

2   discontinuation of those orders either, or that they had anything to do with

3   Decedent's suicide attempt by choking on food items.  (SAC ¶ 33.)  *Clouthier*

4   therefore does not clearly establish that Gastelo's alleged conduct was

5   unconstitutional.

6        In another case, the Ninth Circuit concluded that "[w]hen a detainee attempts

7   to threaten suicide en route to jail, it is obvious that the transporting officers must

8   report the incident to those who will next be responsible for her custody and

9   safety."  *Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *vacated*, 563

10  U.S. 915 (2011), *opinion reinstated in relevant part*, 658 F.3d 897 (9th Cir. 2011).

11  The factual circumstances here are simply too dissimilar.  Decedent was not being

12  transported to a new facility.  Nor did Gastelo witness the Decedent threaten or

13  attempt suicide and then fail to report that information to those next responsible for

14  Decedent's custody.  *Conn* therefore does not clearly establish that Gastelo's

15  alleged conduct was unconstitutional.

16       More recently, in February 2019, the Ninth Circuit considered whether an

17  officer who failed to immediately attend to a detainee who attempted to commit

18  suicide in a holding cell violated the detainee's constitutional rights.  *Horton*, 915

19  F.3d at 596-99.  The Ninth Circuit found that the officer was entitled to qualified

20  immunity because during their interactions, the detainee was cooperative and had

21  told the officer that he was not having medical problems, and the officer did not

22  know that the detainee had been suicidal two weeks before the incident.  *Id.* at 600-

23  602.  In this case, the allegations fail to even connect Gastelo to any of the events

24  involving Decedent; and, again, Decedent was already under the care of the mental

25  health system.  Therefore, just as qualified immunity was affirmed in *Horton*, the

26  court should find that it is applicable in this case.

27  / / /

28  / / /

16

1    One week after *Horton* was decided, the United States District Court for the

2 Eastern District of California also found correctional officers were entitled to

3 qualified immunity in another prison suicide case.  *M.B. by and through Beverly v.*

4 *California*, No. 2:17-cv-02395-WBS-DB, 2019 WL 498994, at *4-6 (E.D. Cal.

5 Feb. 8, 2019).  In that case, the decedent had a history of attempted suicides and

6 had expressed recent intentions to kill himself.  *Id.* at *3.  Discussing *Conn* and

7 *Clouthier*, the court found that those cases presented situations where there were

8 imminent, rather than chronic, suicide risks that were ignored by the officers who

9 were aware of the looming risk.  *Id.* at *6.  The facts of *M.B.* were more similar to

10 *Horton*, in that they did not suggest that the decedent's risk on the day of his death

11 was especially acute.  *Id.*  "Thus, at the time of the incident, there was no case law

12 clearly establishing that, absent some moment of punctuated crisis, officers have an

13 obligation to implement particular suicide-prevention protocols."  *Id.*

14    The facts of this case, and Gastelo's purported individual involvement, is even

15 further remote than in *Horton* and *M.B.*  There are no allegations that Gastelo

16 engaged in any conduct that was clearly established as unconstitutional.  Gastelo

17 therefore is entitled to qualified immunity on Plaintiffs' federal claims.

18 ///

19 ///

20 ///

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

The allegations against Gastelo in the SAC are identical to those made in the original complaint and the FAC.  Like those complaints, the SAC fails to state any cognizable claim against Gastelo.  There are no new facts connecting Gastelo to Decedent's death and, since the complaint has been amended twice, there is no reason to believe that further amendment can cure this issue.  Additionally, Gastelo is entitled to qualified immunity because the SAC fails to state a claim, and because the state of the law regarding prison suicide prevention policies was unsettled at the time of Decedent's death.  Accordingly, the claims against Gastelo should be dismissed with prejudice.

Dated:  December 14, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JON S. ALLIN
Supervising Deputy Attorney General

*/s/ David C. Goodwin*

DAVID C. GOODWIN
Deputy Attorney General
*Attorneys for Defendant Gastelo*

SA2020101463
34637817.docx

18