ROB BONTA
Attorney General of California
JON S. ALLIN
Supervising Deputy Attorney General
DAVID C. GOODWIN
Deputy Attorney General
State Bar No. 283322
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7342
 Fax: (916) 324-5205
 E-mail: David.Goodwin@doj.ca.gov
*Attorneys for Defendant Gastelo*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| **ESTATE OF ALEXANDRE TOULOUDJIAN, et al.,**<br><br>Plaintiff,<br><br>v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,**<br><br>Defendants. | 2:20-cv-00520-FLA-KS<br><br>**DEFENDANT GASTELO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Date:       7/23/2021<br>Time:       1:30 p.m.<br>Courtroom:  6B<br>Judge:      Hon. Fernando L. Aenlle-Rocha<br>Trial Date: None set<br>Action Filed: 1/17/2020 |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

Argument ..................................................................................................................... 2

    I.    The Third Amended Complaint Fails to State a Claim Based on Supervisory Liability ............................................................................... 2

        A.    Summary of Plaintiff's Opposition ............................................... 3

        B.    The TAC Fails to State a Claim for Supervisory Liability ......... 4

    II.   The Third Amended Complaint Fails to State a Claim Based on Deliberate Indifference. ................................................................................ 5

        A.    Summary of Plaintiff's Opposition ............................................... 6

        B.    The TAC Fails to State a Claim for Deliberate Indifference. ................................................................................... 6

    III.  Plaintiffs' Opposition Fails to Overcome Qualified Immunity. ............ 7

        A.    The Law Regarding Prison Suicide Prevention Policies Was Unsettled in 2018. ................................................................. 7

        B.    The Coleman Orders Cited in the Opposition Do Not Clearly Establish that Gastelo's Alleged Involvement Was Unlawful. ..................................................................................... 10

Conclusion ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. al-Kidd*
   131 S. Ct. 2074 (2011) ...................................................................................... 11

*Ashcroft v. Iqbal*
   556 U.S. 662 ............................................................................................... 2, 5, 6

*Blantz v. Cal. Dep't of Corr. & Rehab.*
   727 F.3d 917 (9th Cir. 2013) ............................................................................... 5

*Brown v. Plata*
   563 U.S. 493 (2011) .......................................................................................... 10

*City & Cnty. of San Francisco v. Sheehan*
   135 S. Ct. 1765 (2015) ........................................................................................ 7

*Clouthier v. Cty. of Contra Costa*
   591 F.3d 1232 (9th Cir. 2010) .......................................................................... 8, 9

*Coleman v. Brown*
   No. 2:90-cv-0520 (E.D. Cal.) ................................................................... 3, 10, 11

*Conn v. City of Reno*
   591 F.3d 1081 (9th Cir. 2010) ............................................................................. 9

*Cousins v. Lockyer*
   568 F.3d 1062 (9th Cir. 2009) ........................................................................... 11

*Davis v. Scherer*
   468 U.S. 183 (1984) ...................................................................................... 8, 11

*District of Columbia v. Wesby*
   138 S. Ct. 577 (2018) .......................................................................................... 7

*Farmer v. Brennan*
   511 U.S. 825 (1994) ............................................................................................ 5

*Hamby v. Hammond*
   821 F.3d 1085 (9th Cir. 2016) .......................................................................... 7, 8

# TABLE OF AUTHORITIES
## (continued)

Page

*Horton v. City of Santa Maria*
915 F.3d 592 (9th Cir. 2020) ................................................................... 8, 9, 12

*Keates v. Kolie*
883 F.3d 1228 (9th Cir. 2018) .......................................................................... 5

*M.B. by and through Beverly v. Calif.*
No. 2:17-cv-02395, 2019 WL 498994 (E.D. Cal. Feb. 8, 2019) ..................... 12

*Mullenix v. Luna*
136 S. Ct. 305 (2015) (per curiam) .................................................................. 7

*Pearson v. Callahan*
555 U.S. 223 (2009) .......................................................................................... 7

*Reichle v. Howards*
566 U.S. 658 (2012) ........................................................................................ 11

*Rodriguez v. Cty. of Los Angeles*
891 F.3d 776 (9th Cir. 2018) ................................................................... 2, 3, 4

*Romero v. Kitsap County*
931 F.2d 624 (9th Cir. 1991) ............................................................................ 8

*S.B. v. Cty. of San Diego*
864 F.3d 1010 (9th Cir. 2017) .......................................................................... 8

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) ...................................................................... 2, 4

*Taylor v. Barkes*
575 U.S. 833 (2015) ........................................................................................ 11

*Toguchi v. Chung*
391 F.3d 1051 (9th Cir. 2004) .......................................................................... 5

**STATUTES**

42 U.S.C.
§ 1983 ........................................................................................................... 2, 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Eighth Amendment ................................................................................ 1, 5, 10
    Fourteenth Amendment .................................................................................. 1, 6

## INTRODUCTION

The Court should grant Defendant Gastelo's motion to dismiss because the Third Amended Complaint (TAC) does not plead facts showing that Gastelo knew of, and disregarded, a serious risk to Decedent's health. The TAC does not allege that Gastelo had any personal involvement with, or any proximate connection to, Decedent's attempted suicide. Instead, the TAC makes only sweeping generalizations that, because of general reporting requirements to her for notable events occurring within the prison, that Gastelo must be liable because of her supervisory position and as the prison's head administrator. The Court should find this is insufficient to state a civil-rights claim.

Decedent was transferred to California Men's Colony (CMC) following a suicide attempt at another prison. The TAC alleges that Decedent was then housed in the CMC mental health unit, under supervision of licensed mental health clinicians, with orders for medications, observations, and safety accommodations. The TAC further alleges that CMC had a low to non-existent incidence of prison suicide attempts during the relevant time. Further, when staff found Decedent in his cell after his suicide attempt, they responded and transported Decedent to the hospital. The TAC does not identify any allegedly unconstitutional policy, and it fails to proximately link Gastelo to Decedent's suicide attempt or death. The TAC therefore fails to plead factual content that would support a reasonable inference that Gastelo is liable under the Eighth Amendment.

Additionally, for the second time, Plaintiffs fail to address Gastelo's argument against the second claim's Fourteenth Amendment component (deliberate indifference). The argument therefore stands unopposed and the TAC's Fourteenth Amendment component should be dismissed with prejudice.

Finally, the Court should find that Gastelo is entitled to qualified immunity. Even if Plaintiffs were able to state a cognizable constitutional claim, the Court has already acknowledged that the state of the law regarding prison suicide prevention

policies, and whether a prison warden must implement specific suicide prevention protocols for an inmate housed in the prison's mental health division, was unsettled at the time of Decedent's death.  (Order at 8-12, ECF No. 54.)  Despite having the burden to do so, Plaintiffs do not cite any new authority showing that the state of the law regarding prison suicide prevention policies was settled at the time of Decedent's death.  The only authorities cited by Plaintiffs are those that the Court has already considered and found inapposite.  The Court therefore should find that Gastelo is entitled to qualified immunity.  No further amendment can cure these deficiencies, particularly because the qualified immunity argument is the same that the Court has already considered and found in Gastelo's favor.  Gastelo therefore should be dismissed with prejudice.

## ARGUMENT

### I.   THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM BASED ON SUPERVISORY LIABILITY.

Vicarious liability may not be imposed on a supervisor for acts of employees in an action based on 42 U.S.C. § 1983.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 2009).  "A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*

To state a claim for supervisory liability, there must exist either (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."  *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011).  Thus, "a supervisor may be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or

2

control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez*, 891 F.3d at 798. The Court should dismiss the TAC because it fails to allege facts that satisfy these requirements.

### A. Summary of Plaintiff's Opposition

In opposition, Plaintiffs argue that Gastelo had personal oversight over the health and safety of the prison population, and that her "position gave her access to multiple channels of information with respect to the potential suicidality of inmates at CMC." (Pl.'s Opp'n at 9, ECF No. 57.) Further, that the general reporting requirements would allow "for the reasonable inference that Gastelo was aware of [Decedent's] suicidality." (*Id.* at 10.) Plaintiffs argue that, at a minimum, Gastelo would have been notified that Decedent was transferred to CMC after a suicide attempt. (*Id.* at 11.) And that because of the *Coleman* class action, Gastelo "would have been aware of issues with the provision of mental health care and suicide prevention." (*Id.*) Plaintiffs then go on to essentially argue that, if Gastelo was unaware of Decedent's suicidality, then that would have been a failure of the prison's reporting requirements, which "would demonstrate a complete disregard for the wellbeing of her inmates and would in of itself be sufficient to state a claim of deliberate indifference." (*Id.*)

Plaintiffs further argue that prison staff were not adequately trained or supervised by Gastelo. (*Id.* at 12.) This then led to a failure in providing adequate suicide prevention measures. (*Id.*) Additionally, because Decedent's suicide prevention measures were withdrawn, Gastelo either tolerated the disregard for Decedent's safety, or failed to enforce reporting mechanisms, and in either scenario was deliberately indifferent to her subordinate staff. (*Id.*) "Gastelo developed policies within the prison which failed to protect [Decedent] and had the ability to alter those policies." (*Id.*) Yet she "did nothing to curtail it or discipline the offenders." (*Id.*) Plaintiffs thus argue that either the prison's policies were

3

inadequate or that those involved in monitoring Decedent were deliberately indifferent to his safety. (*Id.*) And, "[B]ecause the prison officials and supervisors failed to train, correct unconstitutional policy or discipline offenders, they are liable as supervisors under 42 U.S.C. § 1983." (*Id.* at 13.)

### B. The TAC Fails to State a Claim for Supervisory Liability.

The Court should find that the TAC's allegations are insufficient to meet the standards set forth in *Rodriguez* and *Starr*. There are no facts that Gastelo was personally involved in any constitutional violation. The analysis therefore turns on whether the TAC sufficiently pleads a causal connection between Gastelo's alleged conduct and an alleged underlying constitutional violation.

The problem with the TAC is that it fails to allege any facts showing that Gastelo was aware of any substantial risk of serious harm leading up to Decedent's suicide attempt. The TAC discusses various reporting requirements that are triggered after a notable incident occurs. However, there are no allegations regarding any triggering events at CMC between Decedent's arrival and his attempted suicide on January 21, 2018. And, even if there were triggering events, they would be immaterial, because the TAC alleges that Decedent was already housed in the CMC mental health crisis unit and under the direct care of mental health staff. (TAC ¶¶ 32, 56.) Orders from mental health staff were also in place for observations, various medications, a safety smock, a safety mattress and blanket, and tooth powder. (*Id.*) There are no facts that Gastelo—the institution's Warden—was aware of a serious medical need and that she was aware that staff failed to act.

Similarly, the TAC does not allege a claim based on failure to train or supervise subordinate staff. The TAC does not allege any facts showing that Gastelo was aware of a training deficiency before Decedent's attempted suicide. Nor does the TAC allege any facts showing that Gastelo knew that her subordinates were committing constitutional violations and that she acquiesced to that conduct.

4

The TAC also fails to state a claim based on any deficient policymaking. While Plaintiff's opposition states, "Gastelo developed policies within the prison which failed to protect [Decedent] and had the ability to alter those policies," the TAC itself does not identify any specific policy at issue, and only makes vague references to "inmate welfare policies." (Pl.'s Opp'n at 12; TAC ¶ 52.) The Court should find these vague assertions are insufficient to state a claim for the same reasons discussed in its order granting the motion to dismiss the SAC. (Order at 7-8, ECF No. 54.)

Like the SAC, the TAC's allegations are "naked assertions" and "labels and conclusions" that lack any specific factual allegations linking Gastelo to Decedent's attempted suicide, and are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678; *Keates v. Kolie*, 883 F.3d 1228, 1243 (9th Cir. 2018) (affirming dismissal of supervisory liability claim based on conclusory and speculative allegations); *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (finding "conclusory allegations" that a supervisory defendant "directed" other defendants, without factual assertions to support the allegation, were insufficient to defeat a motion to dismiss). Sufficiently pleading a claim "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. The first claim for supervisory liability should therefore be dismissed.

## II. THE THIRD AMENDED COMPLAINT FAILS TO STATE A CLAIM BASED ON DELIBERATE INDIFFERENCE.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A prison official acts with deliberate indifference only if she knows of and disregards an excessive risk to inmate health and safety. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The Court should dismiss the TAC's deliberate indifference claim against Gastelo because it fails to allege that she was

personally aware of an acute risk to Decedent's health and safety and deliberately ignored the risk.

### A. Summary of Plaintiff's Opposition

Plaintiffs argue that "Defendants were aware of [Decedent's] need for intensive monitoring." (Pl.'s Opp'n 13.) Decedent suffered from serious mental illness, had previously attempted suicide, was placed in protective custody, and was monitored every fifteen minutes. (*Id.*) Plaintiffs then argue, "It is reasonable to conclude that if the suicide prevention policies of the CDCR were adequate and Defendants had acted without deliberate indifference, [Decedent] would have been unable to attempt suicide." (*Id.*)

### B. The TAC Fails to State a Claim for Deliberate Indifference.

As discussed above, "unadorned," "naked assertions," and "labels and conclusions" that lack any specific factual allegations linking Gastelo to Decedent's attempted suicide are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Plaintiffs contend that if the suicide prevention policies were adequate, and defendants had not acted with deliberate indifference, then Decedent would not have been able to commit suicide. However, there are no facts pled to support that conclusion.

Furthermore, Plaintiff's concession that Gastelo was not directly involved in Decedent's care should result in this claim against her being dismissed. (Pl.'s Opp'n 14.) Plaintiff's claim against Gastelo relates to deliberate indifference in her supervisory capacity. (*Id.*) Plaintiffs therefore are essentially arguing two claims based on the same legal theory. (*See* TAC ¶¶ 44, 55-61.) The claims should be merged into one and, as discussed above, dismissed because the TAC substantively fails to state a claim for supervisory liability.

Finally, Plaintiffs do not address Gastelo's arguments regarding the TAC's failure to state a cognizable claim under the Fourteenth Amendment. The Court should therefore grant the motion to dismiss the Fourteenth Amendment component of the second claim as unopposed.

### III. PLAINTIFFS' OPPOSITION FAILS TO OVERCOME QUALIFIED IMMUNITY.

Gastelo moved to dismiss the TAC because she is entitled to qualified immunity for each of Plaintiffs' claims. In opposition, Plaintiffs recite the same arguments made in their opposition to the motion to dismiss the SAC. (*See* Pl.'s Opp'n at 14-16.) Plaintiffs do not cite any new case law that the Court has not already considered. (*Id.*) The Court's order granting the motion to dismiss the SAC, and finding Gastelo is entitled to qualified immunity, should therefore be dispositive on this issue. (Order at 8-12, ECF No. 54.)

#### A. The Law Regarding Prison Suicide Prevention Policies Was Unsettled in 2018.

Qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citations omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* This is a demanding standard. *Id.* To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent and not simply suggested by then-existing precedent. *Id.*

Additionally, the right at issue must be narrowly defined in light of the specific context at issue in the case, and not at a high level of generality. *See, e.g.*, *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam); *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-76 (2015) ("We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."). Whether a right is clearly established is a "fact-specific, highly contextualized" inquiry. *Hamby v. Hammond*, 821 F.3d 1085,

1091-92 (9th Cir. 2016). "[T]he farther afield existing precedent lies from the case under review, the more likely it will be that the officials' acts will fall within that vast zone of conduct that is . . . arguably constitutional." *Hamby*, 821 F.3d at 1095. Under the Supreme Court's "exacting standard" to overcome qualified immunity, the Court must "identify a case where an officer acting under similar circumstances" was held to have violated the right at issue. *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)).

In the moving papers, Gastelo argued that she is entitled to qualified immunity because the law regarding prison suicide prevention policies was unsettled in 2018. The burden therefore shifted to Plaintiffs to show that the statutory or constitutional rights were clearly established at the time of the conduct at issue. *See Davis v. Scherer*, 468 U.S. 183, 190 (1984); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

Plaintiffs' opposition does not cite controlling authority that placed this constitutional question beyond debate. In fact, the two Ninth Circuit cases cited in the opposition, *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1245 (9th Cir. 2010) (finding against qualified immunity), and *Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2020) (finding in favor of qualified immunity), were both cited in the moving papers.

*Clouthier*, which Plaintiffs' opposition primarily focuses on, concerned allegations against a mental health specialist who was providing direct patient care to a pretrial detainee. *Clouthier*, 591 F.3d at 1245. The specialist was aware that the decedent was suicidal and that he had attempted suicide before, but nonetheless "removed the detainee from regular suicide monitoring and instructed officers to return his regular clothes and bedding, which he eventually used to commit suicide." *Id.* The Ninth Circuit found that "a reasonable mental health professional

8

could not have thought it was lawful to remove key suicide prevention measures put in place by a prior Mental Health staff member." *Id.*

The allegations in the TAC are not similar to those in *Clouthier*. Gastelo is the warden of CMC. She is not a mental health specialist that provides direct patient care. There are no allegations that she had any involvement in Decedent's treatment. In fact, Plaintiffs concede that fact in their opposition. (Pl.'s Opp'n at 14:3-5.) Furthermore, there are no allegations that Decedent was placed on "key suicide prevention measures put in place by a prior Mental Health staff member" and that Gastelo removed Decedent from those measures. *Cf. Clouthier*, 591 F.3d at 1245. *Clouthier* therefore does not defeat Gastelo's qualified immunity in this case.

*Horton* concerned allegations where a pretrial detainee was arrested but remained cooperative. *Horton*, 915 F.3d at 596 (9th Cir. 2019). The officer in charge was not aware of any suicidal intentions and the detainee denied having any medical problems. *Id.* The officer placed the detainee in a temporary holding cell for an hour and a half while he spoke to the detainee's mother and filled out paperwork. *Id.* The detainee removed his belt and hanged himself, causing brain damage. *Id.* The Ninth Circuit found that "a reasonable officer would not have known that failing to attend to Horton immediately would be unlawful under the law at the time of the incident." *Id.* at 601. This was because the detainee did not commit suicide in the presence of the officer, such as in *Conn v. City of Reno*, 591 F.3d 1081 (9th Cir. 2010), nor "had he attempted suicide multiple times and been deemed such a risk that medical specialists placed significant suicide prevention measures in place, measures removed by the defendant," such as in *Clouthier*.

As stated above, there are no facts that Gastelo had any involvement with Decedent whatsoever. *Horton* therefore does not defeat qualified immunity.

///

///

9

**B. The *Coleman* Orders Cited in the Opposition Do Not Clearly Establish that Gastelo's Alleged Involvement Was Unlawful.**

Plaintiff's reliance on *Coleman v. Brown*, No. 2:90-cv-0520 (E.D. Cal.), is also misplaced. The *Coleman* class action involves the class of seriously mentally ill California inmates. *Brown v. Plata*, 563 U.S. 493, 506 (2011). In 1995, the *Coleman* district court appointed a Special Master to oversee development and implementation of a statewide remedial action plan to for the delivery of mental health services. *Id.* The remedial plan is not a determination regarding the constitutionality of certain conduct. *See Coleman*, 2013 U.S. Dist. LEXIS 29338, at *19-21 (Feb. 27, 2013) ("[The Special Master is not tasked with 'assessing whether the State's prison mental health care system satisfies Constitutional standards' . . . . That assessment is for this court.").

Plaintiff's opposition argues that *Coleman* establishes as a matter of law that inmates have a constitutional right to mental health services. (Pl. Opp'n 7.) However, there is no question here as to whether inmates are generally entitled to mental health care under the Eighth Amendment. Indeed, the TAC specifically alleges that Decedent was transferred to the care and observation of the mental health department for suicidal precautions and psychiatric treatment, showing that the Decedent had been receiving mental health care. (TAC ¶ 32.) Whether or not the Eighth Amendment establishes a right to mental health care therefore is not at issue in this action.

Plaintiff's opposition further cites to an order entered in *Coleman* on January 25, 2018. (Pl. Opp'n at 7-8.) Plaintiff states that the order referenced a report from the Special Master, filed on September 7, 2017, showing that there were concerns about CDCR's suicide-prevention practices. (*Id.* at 8.) However, Plaintiffs' argument regarding this order is also misplaced.

The *Coleman* order discusses the development and implementation of *revised* suicide prevention policies. *Coleman v. Brown*, No. 2:90-cv-0520, 2018 U.S. Dist.

10

LEXIS 15351, at *6-7.  The order did not find that *existing* suicide prevention policies were unlawful.  Nor did the order discuss California Men's Colony (CMC) or any specific policy that may be relevant in this case.

Furthermore, even if it had, violations of a prison policy do not rise to constitutional violations unless the policy also violated a specific constitutional right.  *Cousins v. Lockyer*, 568 F.3d 1062, 1070 (9th Cir. 2009); *see also Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision," unless the statute or regulation violated gives right to the cause of action brought.)  The TAC fails to identify any specific policy at issue in this case and fails to show that any such policy violated the Constitution.

Even if the *Coleman* order stood for the proposition that Plaintiffs argue, that the law concerning suicide protocols was settled and that the protocols at issue in this case violated the Constitution, it still would not preclude qualified immunity.  Once the right is properly framed, a court must ask whether "every reasonable official would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) at 2093.  For that to be true, "existing precedent must have placed the . . . constitutional question beyond debate." *Id*.  This requires either "controlling authority" or "a robust consensus of cases of persuasive authority" establishing that the official's conduct was unconstitutional. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011).  Although the authority need not be "directly on point," it must be sufficiently similar to place the relevant constitutional question "beyond debate." *Id*. at 2083.

As discussed in the moving papers, there are no controlling Supreme Court opinions, Ninth Circuit opinions, or robust consensus of authority that have settled the law regarding prison suicide policies. *See Taylor v. Barkes*, 575 U.S. 833 (2015) (finding no Supreme Court decision or robust consensus of cases establishes

a right to the proper implementation of adequate suicide prevention protocols); *Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019) (finding officer who failed to immediately attend to a detainee who attempted to commit suicide in a holding cell was entitled to qualified immunity); *M.B. by and through Beverly v. Calif.*, No. 2:17-cv-02395, 2019 WL 498994, at *4-6 (E.D. Cal. Feb. 8, 2019) (finding "no case law clearly established that, absent some moment of punctuated crisis, officers have an obligation to implement particular suicide-prevention protocols.").

The law was not settled as to whether Gastelo had an obligation to implement a particular suicide-prevention protocol or policy. The Court should therefore find that Gastelo is entitled to qualified immunity.

## CONCLUSION

The Court should grant Gastelo's motion to dismiss. The TAC fails to state a cognizable claim based on either the Eighth or the Fourteenth Amendments. Plaintiffs have also failed to show that the state of the law regarding prison suicide prevention policies was settled in January 2018. Because the complaint has already been amended three times, and the arguments regarding qualified immunity are unchanged, there is no reason to believe that further amendment would be fruitful. Gastelo therefore requests that the Court grant the motion to dismiss without leave to amend.

Dated: July 9, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
JON S. ALLIN
Supervising Deputy Attorney General

*/s/ David C. Goodwin*

DAVID C. GOODWIN
Deputy Attorney General
*Attorneys for Defendant Gastelo*

SA2020101463
35268094.docx

# CERTIFICATE OF SERVICE

Case Name: **Estate of Alexandre Touloudjian, et al. v. CDCR, et al.**
No.        **2:20-cv-0520-FLA-KS**

I hereby certify that on **July 9, 2021**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

➢ **DEFENDANT GASTELO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **July 9, 2021,** at Sacramento, California.

| K. Jeffers | */s/ K. Jeffers* |
|---|---|
| Declarant | Signature |

SA2020101463
35274562.docx