ROB BONTA
Attorney General of California
TYLER V. HEATH
Supervising Deputy Attorney General
CORINNA S. ARBITER
Deputy Attorney General
State Bar No. 273074
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 321-5799
 Fax: (619) 645-2061
 E-mail: Corinna.Arbiter@doj.ca.gov
*Attorneys for Defendant J. Gastelo*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| **ESTATE OF ALEXANDRE TOULOUDJIAN, et al.,**<br><br>Plaintiff,<br><br>**v.**<br><br>**J. GASTELO**<br><br>Defendants. | 2:20-cv-00520-FLA-KS<br><br>**DECLARATION OF J. GASTELO IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, J. Gastelo declare:

1.      I am a retired annuitant, working for the State of California. Previously, I was the warden at California Men's Colony (CMC). I held this position from 2015 to December 2020. I have personal knowledge of the facts stated below and if called as a witness, I would competently testify to them.

2.      CMC is a prison under the California Department of Corrections and Rehabilitation's (CDCR) umbrella.  CMC has a 50-hospital bed mental health crisis bed unit (MHCB) for inmates who require short-term (up to ten days) acute mental health care.  Attached as Exhibit 1 to this declaration is a true and correct

1  copy of excerpts from the CMC Mental Health Policy & Procedures (MHPP)

2  describing the MHCB at AGO 001695, Chapter 3, Section I, subsections, I, II, and

3  III.

4       3.    As the warden of CMC, I was responsible for safety and security of the

5  inmates, staff, and the public.  I am not, and was not, a mental health clinician and

6  did not have direct involvement in providing for mental health treatment to or

7  suicide prevention for inmates at CMC.  In January 2018, there were about 6,500

8  inmates at CMC.

9       4.    In January 2018, as the warden of CMC, I did not have any

10  supervisory responsibility for California Correctional Institution or any other prison

11  under the CDCR umbrella.

12       5.    I did not have any personal contact with Alexandre Touloudjian while

13  he was at CMC.

14       6.    At all times that I was the warden at CMC, I supervised custody staff

15  (Custody Staff).

16       7.    At all times that I was the warden at CMC, I had no supervisory role

17  over clinical staff at CMC.  Clinical staff at CMC worked under the supervision of

18  the Chief Executive Officer (CEO) of health care services at CMC.  I did not have

19  supervisory authority over the CEO.  We were co-equals in our positions.

20       8.    I was not included in communications about Alexandre Touloudjian

21  and the clinical staff regarding the reasons why he was being transferred from

22  another prison to CMC, including that he had attempted suicide before his transfer.

23  Custody staff, including me, were only provided with information about mental

24  health issues of inmates if clinical staff decided that custody staff needed to know

25  that information.  Disclosure of such information is governed by, among other

26  things, the MHPP.  (*See* Exhibit 1, MHPP at AGO 001714-1715, Chapter 3, Section

27  7, subsections I through III.)

28  / / /

1    9.    I did not receive reports concerning Alexandre Touloudjian made
2    pursuant to Department Operations Manual sections 51060.1, 51060.4.1 and
3    51060.5, and 51070.6 from any other prison regarding a prior suicide attempt
4    because those reports are made to the wardens of the prisons where the suicide
5    attempt occurred.
6    10.    I was not involved in creating Alexandre Touloudjian's mental health
7    treatment plan, nor did I ever access or modify mental health orders or suicide
8    prevention measures for him.  I did not have access to the electronic mental health
9    record of any inmate at CMC.
10    I declare under penalty of perjury that the foregoing is true and correct to the
11    best of my knowledge and that this declaration was executed on July ___6___ 2023,
12    in _Atascadero_____, California.

13

14                                                        J. Gastelo

15

16

17    SA2020101463
       Gastelo Decl.docx
18

19

20

21

22

23

24

25

. 26

27

28

3

Exhibit 1



California Men's Colony Health Care Services
**Correctional Treatment Center Policies and Procedures**
<u>Chapter 3 Mental Health Policy & Procedures</u>
Section 1:  Mental Health Program Description

# CHAPTER 3   *Mental Health*

## Section 1   *Mental Health Program Description*

**I.   PURPOSE:**
The Correctional Treatment Center (CTC) Mental Health Program is a Title 22 Optional Service that shall be organized, staffed and equipped to provide mental health treatment services for patients who require 24-hour inpatient care and treatment for acute mental health disorders.

**II.   REFERENCES:**
- California Code of Regulation, Title 22 Sections 79611, 79743, 79739
- Mental Health Services Delivery System (MHSDS) Program Guide, Chapter 5

**III.   PROCEDURE:**

**A.** The CTC is designed to provide short-term (up to 10 days) acute care service in the least restrictive environment possible and return the patient to the appropriate level of care (LOC) for follow-up treatment.  When necessary, the patient may be referred to a Psychiatric Inpatient Program (PIP) or the Department of State Hospital (DSH) if longer-term inpatient care is required.

**B.** If medically necessary, the patient may be transferred to a local health care facility for care that is not available at the CTC.

**C.** Policies and procedures have been developed and approved through the required committees that provide instruction regarding how to comply with the applicable laws and regulations.

**D.** The MHSDS Program Guide, Chapter 5 further specifies how treatment shall be provided in the CTC Mental Health Program.

**E.** There are policies and procedures describing organization, staffing, training, pre-admission, admission, assessment, treatment planning, treatment, discharge, follow-up on care, and quality management, among others that shall be followed.

**F.** Once a CTC patient is stable, he shall be returned or transferred to the appropriate MHSDS LOC and facility per the MHSDS guidelines and California Department of Corrections and Rehabilitation (CDCR) requirements.

AGO 001695



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 2:  Admissions and Services**

| **Section 2** | **Admission and Services** |
|---|---|

### I.  PURPOSE:
To clearly define admission criteria and outline required treatment for the patients placed in the CTC

### II.  REFERENCES:
- CCR, Title 22 Sections 79739, 79597, 79609, 79611, 79741, 79743, 79747, 79749, 79751, 79753, 79755, 79761
- Penal Code Section 2600
- California Business and Professional Code Section 2570, 2725, 2736, 2860.5, 2873.6, 2908, 4502, 4507, 4511, 4996.2 and 4996.9, CCR, Section 70001 et seq
- Health and Safety Code Section 1284
- Welfare and Institutions Code Section 5622
- MHSDS Program Guide, Chapter 5 Mental Health Crisis Bed

### III.  PROCEDURE:
Referrals for CMC CTC services shall be screened prior to admission.  A patient may not be placed in a mental health treatment program if he is not admitted by a member of the mental health treatment program staff.  For admitted patients, necessary services and adequate space shall be available.

#### A.  Pre-Admission Screening

1. During regular working hours:  A patient referred for admission/consultation shall be pre-screened and evaluated by a psychiatrist or licensed psychologist.

2. After hours: Admission/consult services are provided by the Psychiatrist on Duty (POD).  The clinical director or designee shall establish the POD schedule to arrange for these services with the Chief of Mental Health.

3. Medical clearance is required for admission. This includes a mental status examination, medical history, basic physical examination, and review of available laboratory studies

4. Each patient referred to the CTC shall be clinically screened to ensure that only those meeting the clinical requirements, have current symptoms and/or must be receiving medication for a Diagnostic and Statistical Manual V, diagnosed serious mental disorder (may be provisional), including the following:
   - Schizophrenia (all subtypes)
   - Delusional Disorder
   - Schizophreniform Disorder
   - Schizoaffective Disorder
   - Brief Psychotic Disorder
   - Substance-Induced Psychotic Disorder (exclude intoxication and withdrawal)
   - Psychotic Disorder due to a general medical condition
   - Psychotic Disorder Not Otherwise Specified
   - Major Depressive Disorders
   - Bipolar Disorders I and II

AGO 001696



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 2:  Admissions and Services**

Additional criteria are as follows:

- Marked impairment and dysfunction in most areas (daily living activities, communication and social interaction) requiring 24-hour nursing care
- Dangerous to self
- Dangerous to others as a consequence of a serious mental disorder.

5. The patient's condition, provisional diagnosis and a plan for initial treatment shall be determined by the admitting staff within 24 hours of admission.

6. If the patient does not meet the clinical requirements indicated in the MHSDS program guide, the patient shall not be admitted. In such an instance, the clinical director or designee shall recommend other alternative placements or services for the patient.

## B. Admission to CTC

1. Admission orders shall be provided only by psychiatrists and licensed psychologists.

2. Admission orders and notes must include:

- Reasons for admission
- Medical Clearance
- Initial general orders, e.g. (psychological testing, request for medical records, etc.)
- *Initial Medical orders e.g., (laboratory, medications, diet, etc.)
- Mental status examination
- Suicide Risk Evaluation if applicable
- Orders for Suicide Precaution or Suicide Watch as appropriate
- *Pertinent systems review
- *Brief physical examination including vital signs
- *Evaluate available laboratory reports

*Must be performed by psychiatrist or other physician authorized by the clinical director

3. Upon admission to the unit, an intake assessment shall be made on how to best meet the physical, mental, emotional and social needs of the patient, including provisional and/or differential DSM V diagnosis. This assessment will be accomplished by a psychiatrist or licensed psychologist within the scope of their license.

4. Each patient admitted to the CTC shall be under the primary care of a psychiatrist and psychologist who shall also be responsible for the initial diagnosis, prescribing treatment, writing orders and documenting progress in the patient's Inpatient Health Record.

5. Patients shall be evaluated by a psychiatrist as soon as possible but no later than 72 hours after admission.

6. Social work services shall be provided and shall be organized, directed and supervised by a licensed clinical social worker.  Social work services include but are not limited to an initial evaluation, participation in the IDTT and aftercare planning.

AGO 001697



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 2:  Admissions and Services**

7.  Organized therapeutic social, recreational and vocational activities in accordance with the interest, abilities and needs of the patients, shall be provided and shall include the opportunity for exercise. Such activities shall be provided under the direction of a licensed mental health professional, a recreational therapist, or an occupational therapist.  A schedule of ongoing treatment activities shall be kept current and posted in a prominent location.

8.  Twenty-four hour nursing care shall be available to dispense and supervise medication, provide assistance for activities of daily living, observe and monitor each patient, obtain all physician-ordered laboratory studies, and provide counseling or patient supervision as needed.

AGO 001698



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 3: Inter-Disciplinary Treatment Team and Individual Treatment Plan**

**Section 3   Inter-Disciplinary Treatment Team and Individual Treatment Plan**

### I. PURPOSE:
The purpose of this policy is to clearly define the Individual Treatment Plan process for those patients admitted to the CTC.

### II. REFERENCES:
- CCR, Title 22, Section 79745, 79747
- Mental Health Services Delivery System Program Guide

### III. POLICY:

#### A. Inter-Disciplinary Treatment Team

The Inter-Disciplinary Treatment Team (IDTT) shall be comprised of those persons who work directly with the patient in each of the service areas that provide service to the patient, including:

- Clinical director or designee
- Psychiatrist
- Licensed psychologist
- Licensed clinical social worker
- Nursing staff
- Recreational Therapist
- Correctional Counselor and Correctional Officers
- Patient, if clinically and custodially appropriate
- Any other staff person who is involved in the treatment and care of the patient.

#### B. Individual Treatment Plan

An Individual Treatment Plan (ITP) shall be developed in writing by the IDTT for each patient admitted to the CTC and approved by a psychologist, psychiatrist or Licensed Clinical Social Worker. The ITP shall be developed as soon as possible but no longer than 72 hours following admission. Each ITP shall be updated as clinically required but no less than every seven (7) days.

1. The ITP shall guide all treatment and services to each patient, except for emergency situations, after which the documentation is done as soon as the emergency situation allows. All clinical decisions regarding treatment planning, treatment plan review, updating, transfer and discharge are made by the IDTT, under the supervision of the Clinical Director.

2. The Clinical Director shall assign a primary clinician (a specified psychiatrist, psychologist, licensed clinical social worker, or RN) to lead the development of the ITP.

3. The clinical staff shall assess and monitor a patient's clinical condition as frequently and as clinically appropriate, but no less than daily.

4. The findings from daily contacts shall be documented in a progress note each day. The staff shall observe and note any changes in the patient's condition and the treatment plan shall be modified in response to the observed changes.

#### C. Completion of Individual Treatment Plan

AGO 001699



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 3: Inter-Disciplinary Treatment Team and Individual Treatment Plan**

1. The individual treatment plan shall include, but not be limited to the following:
   - A Statement of patient's physical and mental condition, including a mental health diagnosis.
   - Prescribed medication, dosage and frequency of administration.
   - Specific goals of treatment with intervention and actions that identify steps toward improvement or recovery and observable, measurable objectives.
   - Identification of methods to be utilized including restraints and seclusion, the frequency for conducting each treatment method and the person(s) or discipline(s) responsible for each treatment method.
   - Documentation of success or failure in achieving stated objectives.
   - Evaluation of the factors contributing to the patient's progress or lack of progress toward recovery and a statement of the multidisciplinary treatment decision for follow-up action.
   - An activity plan.
   - A plan for other services needed by the patient, which are not provided by MH.
   - Goals for aftercare and a plan for post-discharge follow-up.
   - Appropriate custody considerations.

2. The ITP shall be based on a comprehensive assessment of the patient's physical, mental, emotional, and social needs.

3. The IDTT shall review each patient's care as often as necessary and update the treatment plan accordingly, but not less often than weekly. The patient shall be involved in treatment team meetings and treatment planning.

4. Each treatment plan update shall include:
   - Documentation of the patient's response to treatment and progress toward treatment goals, including response to restraints and seclusion if used.
   - Evaluation of factors that hinder progress and the interventions planned to facilitate progress.
   - The most recent diagnosis and descriptions of the main presenting problems.
   - Review of release, discharge, and aftercare plans and appropriate custody and programming considerations.

5. Laboratory test results, consultation, medication, and other therapy shall be regularly reviewed.

AGO 001700



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
Section 4:  Discharge, Aftercare and Referral Planning

| Section 4 | Discharge, Aftercare and Referral Planning |
|---|---|

### I.   PURPOSE:

The purpose of this policy is to clearly define the discharge, aftercare and referral process for those patients admitted to the CTC.

### II.   REFERENCES:

CCR, Title 22, Sections 79743, 79775, 79777, 79779, 79783, 79799, 79805

### III.   POLICY:

#### A.  Discharge Planning

1.  Discharge procedures shall be completed for all patients at the time of discharge to facilitate continuity of care.  Discharge planning is individualized and takes into consideration the unique needs of each patient.

2.  The plan shall be initiated at time of admission and include participation by the patient to the extent clinically appropriate.  The patient has the right to information regarding his discharge during his stay at the CTC.  The clinician responsible for the patient's care shall be consulted before discharge planning is completed.  Discharge planning shall be coordinated by the attending clinician or designee with input from the interdisciplinary team members.

3.  The factors to be considered for developing a discharge plan shall include an assessment of the needs of the patient for medical, psychiatric, psychological, social work, recreation therapy, nursing services, education services, custody needs, and transportation.  The plan shall also ensure that needed services are available at the appropriate level of care.

4.  In the event of a death, the deceased shall be pronounced by the attending physician or physician designee.  The body of the patient shall not be released until an entry has been made in the Inpatient Health Record and signed by a member of the Medical Staff.  Policies with respect to release of dead bodies shall conform to local law.

#### B.  Discharge Criteria

Criteria for discharge from the CTC shall include, but not be limited to:

- Maximum clinical benefit has been reached
- Ability to function in less restrictive setting
- Treatment goals have been met
- Referral to a DSH facility or a PIP is considered for appropriate cases.

#### C.  Discharge Preparation

1.  The psychiatrist or psychologist shall write discharge orders, complete the discharge summary, and complete the Suicide Risk Assessment.  Patients discharged from the CTC shall be accompanied by a transfer or discharge summary describing recommendation for aftercare and the MHSDS Level of Care shall be specified (e.g. EOP, CCCMS, etc) in the discharge orders.  The discharge summary shall include:
    - Course of treatment while in the CTC

AGO 001701



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 4:  Discharge, Aftercare and Referral Planning**

- The mental health services, including medications, the patient will need to continue.
- Any unique mental health or physical condition that could affect treatment (e.g., allergies, special dietary needs, chronic diseases).
- Recommendations for other services needed which are not available through the mental health department.

2. Prior to the patient's discharge from the CTC the nurse shall counsel the patient on medications, make arrangements for follow-up visits, and clear the patient for discharge.

3. If the patient is transferring to another institution, the primary clinician shall contact the receiving institution, and inform the receiving institution, Chief of Mental Health (or designee), about the patient being transferred. Information sent shall include the patient's discharge summary, custody level, treatment needs, and any significant medication conditions.

### D.  After Care Plans

A written aftercare plan shall describe those services that should be provided to a patient following discharge, transfer or release for the purpose of enabling the patient to maintain stabilization and /or achieve an optimum level of functioning.  Prior to or at the time of discharge, transfer or release, the patient shall be evaluated concerning the patient's need for after care services.  This evaluation shall consider the patient's potential in-custody housing, proximity to release from incarceration; probable need for community treatment and social services, and need for continued mental health care.  All aftercare plans shall be included in the Discharge Summary which may include, but not be limited to, the following:

- Admitting information
- Past Psychiatric History
- Medical history
- Substance Abuse History
- Family and Social History
- Assessment
- Diagnosis
- Course of treatment while in the CTC
- Medications used, adverse reactions to medications and reactions, and recommended discharge medications
- Relevant medical findings, positive laboratory findings
- Suicide Follow-up Plan if indicated
- Any available psychological testing reports or treatment summaries
- In-custody housing recommendations
- Recommendations for further mental health services/treatment
- Referrals to social, vocational or education services, if available and appropriate.
- Arrangement for medication supervision and follow-up care
- Recommended medications, including dose, route and frequency of administration, and recommendations on the monitoring and tracking of the patient to ensure treatment compliance.
- Any unique mental health or physical condition that could affect treatment e.g., allergies, special dietary needs, medical illness/chronic diseases.
- Recommendations for other services needed by a patient that are not available through the CTC.

AGO 001702



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 4:  Discharge, Aftercare and Referral Planning**

### E.  Community Referrals

Arrangements for recommended community referral, placement, conservatorship or post-discharge care shall be made prior to release from custody by the Licensed Clinical Social Worker or their designee.

1.  A copy of the Discharge Summary/Aftercare Plan conforming to the requirements of Health and Safety Code Section 1284 and Welfare and Institutions Code Section 5622 shall be transmitted to the local director of mental health services or a designee in the county of residence for any patient referred to community services funded by the Bronzan-McCorquodale Act.

2.  If the patient is discharged from the CTC to the community due to release from incarceration, arrangements for suggested community referral, placement, conservatorship or post-discharge care may be made in consultation with the assigned clinician and the Parole Outpatient Clinic, prior to release from custody. The clinician shall coordinate discharge plans with the patient's care providers (if appropriate and available).

3.  The patient shall receive a copy of the aftercare plan when referred to community services.

AGO 001703



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5:  Involuntary Medications**

| Section 5 | Involuntary Medications |
|---|---|

## I.   PURPOSE:

The purpose for this policy is to clearly define the procedures and the patient's rights.  A patient in crisis who does not consent for treatment with medication may be involuntarily medicated to control symptoms. Those symptoms must constitute a danger to self or others on the basis of a serious mental disorder or be symptoms of a grave disability on the basis of a serious mental disorder.  Involuntary medication within the CTC shall be administered per Penal Code 2602, which took effect on January 1, 2012.

## II.   REFERENCES:

- CCR, Title 22, Section 79799, 79801
- Penal Code 2602
- Welfare and Institution Code Section 5328
- AB1114

## III.   PROCEDURE:

### A.  PC2602 Coordinator

The PC2602 Coordinator shall be designated to maintain and coordinate all aspects of informed consent or involuntary use of medication.

### B.  Informed Consent

Informed consent means that the patient, without duress or coercion, clearly and explicitly manifests consent to the proposed medication to the treating physician in writing.  In order to obtain informed consent, the following information shall be given to the patient in a clear and explicit manner:

1.  Reason for treatment, that is, nature and seriousness of the patient's illness, disorder, or defect.

2.  The nature of the procedures to be used in the proposed treatment, including its probably frequency and duration.

3.  The probable degree and duration (temporary or permanent) of improvement or remission, expected without such treatment.

4.  The nature, degree, duration and the probability of the side effects and significant risks, commonly known by the medical profession, of such treatment, including its adjutants, especially noting the degree and duration of memory loss (including its irreversibility) and how and to what extent they may be controlled, if at all.

5.  Informed if there exists a division of opinion as to the efficacy of the proposed treatment, why and how it works and its commonly known risks and side effects.

6.  Reasonable alternative treatments and why the physician is recommending particular treatment.

7.  The patient has the right to accept/refuse the proposed treatment, and that if the patient consents, has the right to revoke that consent for any reasons, at any time prior to or between treatments.

### C.  Incompetent to Refuse Medication

AGO 001704



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5:  Involuntary Medications**

Patient is "incompetent to refuse medication" or "lacks the capacity to refuse medication" if the patient is unable to understand or knowingly and intelligently act upon the information specified under "informed consent" above.  An patient shall not be deemed incompetent to refuse medication or lacking the capacity to refuse medication solely by virtue of being diagnosed a mentally ill, disordered, abnormal, or mentally defective person.

### D.  Gravely Disabled

Patient is "gravely disabled" if, as a result of a mental disorder, he is unable to use the elements of life that are essential to health and safety, including, food, clothing, and shelter (even though essentials are provided to the patient by others).  Examples of grave disability include but are not limited to:

*   Deterioration in person hygiene.
*   Unable to maintain reasonably clean surroundings.
*   Soils clothes, urinates in bed or on the floor and smears feces on surroundings or on the body.
*   Unable or refused to shave, take a shower, change clothes to the degree that the body smells and becomes very dirty and unhygienic.
*   Refused of food.
*   Refuses to go to the dining room or refuses food when a tray is brought to the patient for three (3) days or longer.
*   Throws food away without eating or is unable to eat without one-to one assistance.
*   Loss of weight and poor nutritional condition due to poor eating or starvation.
*   Destructive behavior.
*   Sets fire in the cell or mattress.
*   Floods the cell.
*   Breaks glass, such as a window.

### E.  Danger to Others

Patient is a "danger to others" if at least one (1) of the follow exists:

*   The patient has attempted, inflicted or made a serious threat of substantial physical harm upon another person with that action having resulted in the patient being taken into a CTC or other inpatient psychiatric unit, and who presents, as a result of mental disorder, a demonstrated danger of inflicting substantial physical harm upon others.
*   The patient has attempted or inflicted physical harm on another person within seven days of being taken into a  CTC or other inpatient psychiatric unit, that threat having at least, in part, resulted in being taken into custody, and the person presents, as a result of mental disorder, demonstrated danger of inflicting substantial physical harm upon others.
*   The patient has made a serious threat of substantial physical harm upon the person of another within seven days of being taken into a CTC or other inpatient psychiatric unit, that threat having at least, in part, resulted in being taken into custody, and the patient presents, as a result of mental disorder, demonstrated danger of inflicting substantial physical harm upon others.

### F.  Danger to Self

Patient is a danger to self if, as a result of a mental disorder, the patient, while in the CTC or other inpatient psychiatric unit, threatens or attempts to take one's own life or threatens, attempts, or inflicts serious physical injury on self and who continues to represent an imminent threat of taking one's own life or an imminent threat of inflicting serious physical injury on oneself.



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5:  Involuntary Medications**

### G.  Psychotropic Medications

The term "psychotropic drug" refers to medication used in the treatment of mental disease, mental disorder, or mental defect.  The term "antipsychotic drug" refers to medication used in the treatment of a psychosis.

### H.  Involuntary Medication Administration

Involuntary medication administration refers to the administration of any psychotropic medication to any person by the use of force, discipline or restraint.  It includes the administration of any such medication or drug to a person who does not give informed consent as defined herein.

Involuntary psychotropic medication shall not be used:

- To control behavior that is not related to a diagnosable psychiatric disorder.
- When a patient is capable of giving informed consent and objects to such medication, unless dangerous to self or others or gravely disabled.
- For indications other than those for which the drug is "labeled" (approved) by the Food and Drug Administration (FDA) or by community standards of professional practice.  If not "labeled" (approved) by the FDA, such use shall require approval by a written statement in the patient's eUHR by the Chief Psychiatrist, or designee.
- That is considered long-acting or depot level psychiatric medication unless PC2602/ Administrative Law Judge process is completed.
- In a dosage or dosages above "labeled" (approved) level by the FDA unless approved by a written statement in the patient's eUHR by the Chief Psychiatrist or designee.

### I.  Medication Log

A continuous daily log of all involuntary medications administered in the CTC shall be maintained by the medication nurse under the direction of the supervising RN in the unit or nursing station.  Each entry in the log shall include:

- Patient's name and CDCR number.
- Psychiatrist or other Physician ordering the medication.
- Reason for medication.
- Date of initial involuntary medication.
- Date, time, route of administration and whether accompanied by use of restraint for each involuntary medication.
- Date of scheduled certification review hearing, if pertinent, and outcome.
- Expiration date of judge's order, if any, authorizing administration of involuntary medication.
- Expiration date of certification period (no later than 24 days after day one of involuntary medication).
- Expiration date of interim order for psychotropic medication (no later than 47 days after day one of involuntary medication).
- The log shall be reviewed and signed monthly by the Chief Psychiatrist or designee.

### J.  Medication Supervision

A physician or Registered Nurse (RN)/Psychiatric Technician (PT) shall be physically present to observe the forcible administration of involuntary medication.  The physician's progress and/or the nursing notes shall:

- Identify personnel administering the medication: psychiatrist, physician or RN//PT.
- Note observation.

AGO 001706



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5: Involuntary Medications**

- Identify location of administering of the medication.
- Describe resistance by patient.
- Describe use of force.
- Describe injury to patient and/or staff.
- Patient's response.

### K. Documentation

Documentation of dangerousness or of grave disability and incompetence to render an informed consent shall be entered in the medical/psychiatric file on a CDCR MH-7230 Interdisciplinary Progress Note.

### L. Emergencies

If in the clinical judgment of a psychiatrist or other physician, an emergency exists, the psychiatrist or other physician may order involuntary medication for a period not to exceed 72 hours.

An emergency exists when there is a sudden marked change in the patient's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the patient or others, and it is impracticable to first obtain consent.

If psychotropic medication is administered during an emergency, such medication shall be only that which is required to treat the emergency condition and shall be provided in ways that are least restrictive of the personal liberty of the patient.

The psychiatrist or other physician shall document that informed consent information including the following, was given, or if not the reason not given:

1. The reason for treatment, the nature and seriousness of the patient's illness or disorder.

2. The medication prescribed, treatment, including frequency, and dosage.

3. The probable degree and duration of improvement or remission expected with and without such treatment.

4. The nature, degree, duration and probability of side effects and significant risks commonly known by the medical profession of such treatment, and how and to what extent they may be controlled.

5. Reasonable alternative treatment and why the physician is recommending this treatment.

### M. Long-Term Treatment

If involuntary medication has been administered to a patient for 72 hours or less, the patient may be certified for up to an additional 21 days of involuntary medication related to the mental disorder under the following conditions:

1. The clinical staff of the facility where the patient is incarcerated has evaluated the patient's condition and found that the patient is, as a result of mental disorder, either:

    a. Gravely disabled and lacks the capacity to refuse medication.

    b. A danger to self or a danger to others.

2. The patient has been advised of the need for, but has not been willing to accept, medication on a voluntary basis.

AGO 001707



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5: Involuntary Medications**

### N. Involuntary Medication Notice

For a patient to be certified for involuntary medication for up to 21 days beyond the initial 72 hours, a CDCR MH-7363 Involuntary Medication Notice (**Attachment 1**) shall be signed by two (2) people, the evaluating physician and the Chief Psychiatrist or designee.

The evaluating physician shall be, if possible, a board-certified psychiatrist. The evaluating psychiatrist shall conduct a face-to-face evaluation of the patient.

1. A designee of the Chief Psychiatrist shall be a psychiatrist or a licensed psychologist who has a doctoral degree in psychology and at least five year of postgraduate experience in the diagnosis and treatment of emotional and mental disorders.

2. A CDCR MH-7363 Involuntary Medication Notice (**Attachment 1**) shall be completed for all persons certified for up to the additional 21 days beyond the initial 72 hours of involuntary medication.

3. A certified copy of the CDCR MH-7363 Involuntary Medication Notice (**Attachment 1**) shall be personally delivered to the patient, the patient's attorney or advocate, or the attorney or advocate designated. The patient shall also be asked to designate any person who is to be sent a copy of the CDCR MH-7363 Involuntary Medication Notice (**Attachment 1**). If the patient is incapable of making this designation at the time of certification, the patient shall be asked to designate a person as soon as the patient is capable. Delivery of the notice shall take place within 72 hours after the initial involuntary medication was administered.

4. The CDCR MH-7363 Involuntary Medication Notice (**Attachment 1**) must be sent to the Office of Administrative Hearings within 72 hours of the initiation of involuntary medication.

5. The Office of Administrative Hearings must issue an interim order within eight (8) days of the initiation of involuntary medication or involuntary medications must be stopped at that time.

6. An Administrative Law Judge Hearing must take place within 24 days of the initiation of involuntary medication.

### O. Procedural Notification

The patient or patient's attorney or advocate may file a response to the petition within five (5) days of the service of the petition on the patient or attorney or advocate. The facility shall file the petition and personally serve a scanned copy of the petition on the patient or attorney or advocate at least 30 days prior to the hearing on the petition. In lieu of personal service on the patient's attorney or advocate, the attorney or advocate may be served by scanned copy at least 30 days prior to the hearing. At least 30 days prior to the hearing, the Office of Administrative Hearings shall serve a copy of the petition on the patient's next-of-kin or on the person listed in the patient's records maintained by the facility to receive notification in case of emergency. Service on such individuals may be made by mail.

### P. Patient Counsel

A patient has the right to a public defender relative to involuntary psychotropic medication. If the patient does not have an attorney or advocate, the public defender or another attorney or advocate shall be appointed or otherwise obtained within five days after filing the petition to represent the patient. The attorney or advocate shall be provided timely access to all documents specified in the section above relating to preparation for the Administrative Law Judge Hearing.

### Q. Patient Attendance At Administrative Law Judge Hearing

The patient shall be present at the hearing except:



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5:  Involuntary Medications**

1. When the patient is unable to attend the hearing by reason of medical inability, and the CDCR obtains an order from an administrative law judge authorizing the nonattendance of the patient.

2. When an investigator, or the patient's attorney or advocate, reports to the administrative law judge that the patient has expressly communicated the patient's refusal to attend the hearing or does not wish to contest the petition.

3. If the petition alleges or the facility contends the patient is unable to attend the hearing because of medical inability, such inability shall be established by affidavit/certificate of a licensed medical practitioner. This document is evidence only of the patient's inability to attend the hearing and shall not be considered in determining the issue of need for an order authorizing involuntary medication. Emotional or psychological instability is not good cause for the absence of the patient from the hearing unless attendance is likely to cause serious and immediate psychological damage to the patient.

4. If the petition alleges or the CDCR contends that the patient is not willing to attend the hearing, or upon the filing of an affidavit or certificate attesting to the medical inability of the patient to attend the hearing, the CDCR shall request that an investigator or the patient's attorney or advocate be directed to do all of the following:

   - Interview the patient personally
   - Inform the patient of: The contents of the petition.  The nature, purpose and effect of the proceeding. The right to oppose the proceeding, attend the hearing, and be represented by an attorney or advocate.
   - Determine whether it appears that the patient is unable and/or unwilling to attend the hearing.
   - Determine whether the patient wishes to contest the petition.
   - Determine whether the patient wishes to be represented by an attorney or advocate.

## R. Administrative Law Judge Hearing

1. The patient/attorney/advocate shall have the right to file a demand for an expedited hearing on the petition.  If the demand is not filed, the hearing shall commence within 10 days of the filing date.

2. If a patient petitions the administrative law judge for a rehearing to contest whether the patient presently is a danger to others; a danger to self; or gravely disabled and incompetent to refuse medication, no further petition for rehearing shall be submitted for a period of six months.

3. In the event a patient who has been found by the administrative law judge not to meet the criteria for involuntary medication with the preceding 30 days is administered antipsychotic medication in an emergency, and such emergency condition is likely to last beyond 24 hours, the treating physician shall file a new petition within 48 hours.  The patient-or the patient-s attorney or advocate may file a request for an expedited hearing on the petition.  If such a request is filed the hearing shall be held within five days of the filing of the request.

## S. Renewal of Medication Orders

No later than 30 days before an order authorizing the administration of involuntary medication is due to expire, clinical staff of the facility where the patient is currently housed shall evaluate the patient to determine whether renewal of the order is clinically appropriate. Renewal is appropriate if the patient, even after administration of antipsychotic medication, still has no insight into the patient's mental illness, if the patient refuses to accept that the patient has a mental illness or needs medication, or if it is clear that the patient, but for the mediation, would be dangerous or gravely disabled once again.  If clinical

AGO 001709



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 5:  Involuntary Medications**

staff determine that renewal is appropriate, the procedures outlined in these sections for filing of petitions shall be followed (i.e. no certification or certification review hearing is necessary).

**T.  Control of Patients**

1. Employees are authorized and may physically restrain an patient when necessary under the following circumstances:
   - To prevent injury to other persons
   - To prevent suicide or self-inflicted serious injury.
   - To prevent escape.
   - To accomplish a necessary change in location after the patient has been given a reasonable opportunity to cooperate and refused.  A supervisor shall be present to supervise the activity.
   - To administer medically ordered involuntary medication supervised by a custody supervisor and observed by a medical doctor or RN/PT.

2. Contained or controlled situations (such as a recalcitrant patient in a locked cell or room) with no apparent likelihood of immediate danger of injury to any persons shall be evaluated and alternatives to the use of force considered.  In such controlled non-emergency situations, the calculated use of force shall be authorized only be personnel at the level of Correctional Captain or above.  On the unit, the approval of the clinical director or designee shall be required.

3. Staff shall:
   - Verbally report to the immediate supervisor each incident where physical force is used to subdue, contain or control a patient.
   - Fully document the incident in writing prior to staff leaving the facility.

4. Supervisor shall:
   - Provide supervision of the incident, when possible, to ensure only the minimum amount of force is used to control the situation.
   - Not become actively involved in the use of force unless absolutely necessary.
   - Immediately report incident to Watch Commander and complete a written report to the immediate supervisor.

5. Supervisor in charge shall:
   - Ensure medical attention and care are provided.
   - Have personnel evaluated by medical staff and first-aid administered if required.
   - Have any injured patient treated by medical staff and such treatment documented on a CDCR 7219 Medical Report of Injury or Unusual Occurrence.
   - Have photographs taken of all persons involved and verify photographs are true depictions.
   - Log and maintain negatives and pictures for two years before obliteration.

**ATTACHMENTS:**

| | |
|---|---|
| **Chapter 3.5 Attachment 1A:** | **CDCR MH-7363 Involuntary Medication Notice** |
| **Chapter 3.5 Attachment 1B:** | **CDCR MH-7363 Involuntary Medication Instructions** |
| **Chapter 3.5 Attachment 1C:** | **CDCR MH-7363-B- Involuntary Med Notice Add-A-Page** |
| **Chapter 3.5 Attachment 1D:** | **CDCR MH-7363-B - Involuntary Med Notice Add A Page Instructions** |

AGO 001710



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
Section 6:  Patient Transfers

| Section 6 | Patient Transfers |
|---|---|

**I.   PURPOSE:**

The CTC shall initiate a transfer based on a clinical need for treatment.

**II.   REFERENCES:**

- CCR, Title 22, CCR Sections 79789
- MHSDS Program Guide, Chapter 5 Mental Health Crisis Bed

**III.   PROCEDURE:**

**A.  Reasons for Transfer**

1.  Specialized Services Required

    The patient may require specialized services that are not available in the current mental health setting.  Needed services may require referral to a Department of State Hospitals (DSH) facility, a PIP, or a general acute care hospital.  Transfer agreements are on file with the medical contract analyst.

2.  Different Level of Care Required

    The patient may need a different level of care which may be within the institution or at other institutions.

**B.  Interdisciplinary Treatment Team (IDTT)**

The IDTT shall meet and review the Individual Treatment Plan (ITP). The team shall decide whether a transfer is indicated based on a clinical need for treatment.  The transfer shall be approved by the Clinical Director or designee.

**C.  Medical Clearance**

The CTC physician shall determine whether the patient is "medically cleared" to transfer.  State law provides that before a patient may be transferred to a health facility, the patient shall be sufficiently stable to be transported.  The CTC physician shall evaluate the relative benefits and risks associated with transporting the patient.  The determination of whether the transfer creates an unacceptable risk depends upon the patient's condition, the expected benefits to the patient if transferred, and whether the risks to the patient's health are outweighed by the benefits. It may be clinically appropriate and/or necessary to have nursing staff accompany the patient (MHSDS Program Guide).

**D.  Preparation for Transfer**

1.  Complete and accurate patient information, in sufficient detail to provide for continuity of care, shall be transferred with the patient at the time of transfer.

2.  The Clinical Director or designee shall call the appropriate institution for placement.  Prior to the transfer, the receiving facility Chief Medical Executive (CME), Clinical Director or Chief of Mental Health shall consent to the transfer.

3.  No patient shall be transferred or discharged for purpose of affecting a health care transfer from the facility to another unless arrangements have been made in advance for admission to such a health



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 6: Patient Transfers**

facility. A transfer summary shall accompany or precede the patient upon transfer to another facility where continuing care will be provided.

4. Subsequent to the consent, the Classification and Parole Representative (C&PR) at the receiving institution shall communicate with the sending institution's C&PR regarding acceptance of the patient. The receiving institution's C&PR shall then contact the Classification Services Unit (CSU) for endorsement by a Classification Staff Representative (CSR) or request teletype authorization for the patient's placement.

5. The date, time, condition of the patient, written statement of the reasons for transfer, and documentation that the receiving facility has been informed of the patient's transfer shall be documented on a CDCR 128-MH3 chrono and in the inpatient health record.

6. In cases where the Clinical Director of the sending institution and the Clinical Director of the receiving institution disagree on the need for transfer, the Clinical Director of the sending institution may request a higher level review through the Health Care Placement Oversight Program (HCPOP) at Health Care Services Division (HCSD).

**E. Final Preparations**

1. The CTC informs the C&PR of the pending transfer and requests a bed number from the receiving institution. The C&PR reviews the case for possible custody concerns and casework completion. CSR endorsement and/or tele-type approval is initiated.

2. The referring psychiatrist/psychologist completes a CDCR 128-C Transfer Chrono. The Transfer Chrono includes:
   - Patient's name
   - CDCR number
   - Receiving institution
   - Bed number
   - Receiving clinician's name

3. The referring psychiatrist/psychologist completes the discharge summary that includes:
   - Patient Diagnosis
   - Treatment Course
   - Medications
   - Dietary Requirements
   - Known Allergies
   - Treatment Plan

   The discharge summary is either faxed or emailed to the receiving institution, or copies to accompany the patient.

4. Nursing staff advises the CTC custody staff of the pending transfer. The C&PR notifies the Captain of the pending transfer and coordinates transportation. The Chief of Mental Health or designee shall determine if nursing staff are required to accompany custody during transport.

AGO 001712



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 6:  Patient Transfers**

5.  The patient shall be notified of the transfer.  The attending clinician shall give the patient an explanation of the need for health care transfer.  The attending clinician shall document this discussion in the patient's Inpatient Health Record.

6.  In accordance with pharmacy policy, transfer medications may be indicated.  In such cases, medication orders shall be completed and nursing staff shall prepare the MAR and medications for transport with the accompanying nursing/transportation staff.

AGO 001713



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 7: Informed Consent and Parameters of Confidentiality**

| Section 7 | *Informed Consent and Parameters of Confidentiality* |
|---|---|

**I. PURPOSE:**
To ensure confidentiality of patient communications with mental health clinicians is protected.

**II. REFERENCES:**
- CCR, Title 22, CCR Sections 79779, 79741
- Welfare and Institutions Code Section 5328
- MHSDS Program Guide, Chapter 1 Program Guide Overview
- CMC Operation Procedure 3024 Psychotherapists Duty to Warn and Protect

**III. PROCEDURE:**

**A. Disclosure of Confidential Information to Non-Clinical Staff**

1. The disclosure of confidential information to non-clinical staff is permissible when:

   a. Patient is suicidal and it is clinically necessary to inform others in order to protect the patient.

   b. Patient is:
      - Receiving psychotropic medication: as an example, custody may need to know (without disclosing specifics) that a patient is on a medication that causes side-effects that may interfere with the ability to follow orders or participate in programming.
      - Being noncompliant with medication: as an example, custody may need to be informed that a patient is medication noncompliant and needs to be restrained for the administration of such, pursuant to an involuntary medication order.

   c. The patient requires movement to a special unit for observation, evaluation or treatment of acute episodes.

   d. The patient requires transfer to a treatment facility outside the prison.

2. Disclosure of confidential information to appropriate non-clinical staff is mandatory when:

   a. The patient is homicidal, by virtue of either conduct or oral statements, and there is a reasonable identifiable victim.

   b. The patient specifically admits to, or leads the clinician to a reasonable suspicion of, child or elder abuse.

   c. The clinician has reasonable cause to believe that the patient is in such a mental or emotional condition as to be a danger to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger, by virtue of any of the following:
      - A patient's conduct/behavior, including possession of a weapon.
      - A patient's oral statement, including communications such as those that indicate a place for drug trafficking or a plan for sexual misconduct.
      - Signs and symptoms that a patient is in a state of acute intoxication, secondary to either illegal substances or prescribed medications.

   d. The patient presents a reasonably clear risk of escape or creation of internal disorder or riot.

AGO 001714



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 7: Informed Consent and Parameters of Confidentiality**

**B. Scope of Disclosure**

Only limited and relevant health care information should be shared, and only with those non-clinical staff who have a need to know. In situations where disclosure of confidential communication is deemed permissible, the clinician has the responsibility to weigh the potential harm and benefit of both maintaining confidentiality and of disclosing the information, in order to determine if disclosure if necessary.

**C. Duty to Disclose Limits of Confidentiality**

Clinicians are responsible for informing the patient of the limits of confidentiality, or ensuring that prior documentation in the eUHR indicates that this disclosure has occurred prior to commencement of a clinical encounter. CDCR 7448 Informed Consent for Mental Health Care (**Attachment 1**) shall be used for this purpose.

Patients should be informed that communication disclosed to a clinician, within the limits described in the guidelines above, and documented in the eUHR, is generally confidential, but that information obtained in the context of a court ordered evaluation (such as for Board of Prison Hearings determination, competency to stand trial, parole/probation reports, etc.) is not.

Upon admission to the CTC, the clinician is responsible for informing patients of the limits of confidentiality, or ensuring that prior documentation (CDCR 7448 **Attachment 1**) in the eUHR indicates that this disclosure has occurred prior to commencement of a clinical encounter.


**ATTACHMENT:**

**Chapter 3.7 Attachment 1: CDCR 7448 Informed Consent for Mental Health Care**



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
Section 8:  Suicide Prevention

| Section 8 | Suicide Prevention |
|-----------|--------------------|

### I.  PURPOSE:
The purpose of this policy is to clearly define the methods to prevent suicide.

### II.  REFERENCES:
- CCR, Title 15
- MHSDS Program Guide, Chapter 10 Suicide Prevention and Response

### III.  PROCEDURE:
All efforts possible shall be made to prevent the patient from suicide, suicide attempt or gesture, and at the same time encourage the patient to be accurately open regarding suicidal thought.

**A.** A patient who contemplates suicide may give advance warning.  Nursing personnel must be alert to this behavior by noting a patient's usual behavior, any changes in behavior, and notifying other IDTT members of any suspected problem.

**B.** Staff shall be familiar with "at risk" behaviors, mood change observation, personality changes, and methods used in suicidal attempts.

**C.** Staff shall take precautions to prevent a suicide attempt or gesture and should be included in the Treatment Plan.  Prevention methods include:

   1. All medications, cleaning agents, keys, and sharp instruments are under immediate employee supervision or in locked cupboards when not in use.

   2. Alertness when a patient is using the shower to prevent hanging, jumping, cutting, or drowning.

   3. Alertness to medication distribution to prevent the patient from discarding or hoarding the medication to attempt an overdose.

   4. Be alert to suicidal patients during shift changes.

   5. Apprise off-unit escort of suicidal concern.

   6. Examine anything the suicidal patient may have in his possession.

   7. Based on the patient's presentation and review of the health record at time of admission, the admitting psychiatrist/psychologist shall note all suicidal concerns and order appropriate safety precautions.

AGO 001716



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 9:  Suicide Watch and Suicide Precaution**

| **Section 9** | **Suicide Watch and Suicide Precaution** |
| --- | --- |

### I.   PURPOSE:
To provide a safe environment and prevent the patient from harming himself and to comply with CCR Title 15 and the MHSDS Program Guide regarding suicide prevention

### II.   REFERENCES:
- CCR Title 15
- MHSDS Program Guide

### III.   PROCEDURE:
The Suicide Watch (SW) and Suicide Precautions (SP) shall be the joint responsibility between custody and health care staff.  A close working relationship shall be maintained between custody and health care staff to ensure the safety and security of the patient.  The psychiatrist or psychologist shall specify Suicide Precaution or Suicide Watch when admitting a patient.

#### A.  Suicide Watch

1. Patients who may be imminently suicidal and in extreme danger of self-injurious behavior may require Suicidal Watch (SW).

2. Patients on SW shall be observed continuously (direct 1:1) by a qualified nursing professional (RN or PT) or member of the health care staff with appropriate training. This is accomplished through the cell door window. A chair is provided to assist the assigned staff to perform his/her duties.

3. The initial orders for SW shall not exceed 24 hours. An authorized clinician shall review, modify, and/or renew the order for Suicide Watch at a minimum of every 24 hours.  Face-to-Face evaluations must be conducted every 24 hours.

4. If behavioral restraints are deemed necessary, an order shall be given by a psychiatrist or psychologist and necessitates an in-person interview by the psychiatrist or psychologist. All restrained patients are placed on SW.

#### B.  Suicide Precaution

When a patient is at a high risk of attempting self-injurious behavior, but is not in immediate danger, he shall be placed on suicide precaution.  .

1. Placement on Suicide Precaution

   a. When a patient is admitted because of an acute risk of self-injurious behavior, active suicidal ideation, threats, or attempts, but is not in imminent danger, he is placed on Suicide Precautions (SP) by an authorized clinician (psychiatrist or licensed psychologist).

   b. Orders for SP shall be renewed at a minimum of every 24 hours.

   c. All patients on SP are checked at staggered intervals of at least every 11 minutes by qualified nursing professionals (RN or PT).

   d. Nursing staff assigned to the patient shall also document the nursing summary of patient's behavior, communication, personal hygiene, and affect every four (4) hours.

   e. The patient's behavior and physical and emotional needs are also communicated verbally between nursing and custody staff, and are discussed with the patient as appropriate.

AGO 001717



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 9:  Suicide Watch and Suicide Precaution**

**Guidelines for Clinician-Ordered Suicide Watch and/or Suicide Precaution:**

| STATUS | HOUSING | CLOTHING / MATERIALS |
|---|---|---|
| Suicide Watch | Any Cell (only place in isolation room if isolation is required for communicable disease) | Safety blanket, safety smock, and safety mattress.  Prescribed health care appliance unless otherwise clinically indicated. |
| Suicide Precaution | Any cell | T-shirt, shorts/boxers, socks, safety mattress, furniture, reading/writing materials and toiletries.  Prescribed health care appliance unless otherwise clinically indicated |
| Q15 Minute Nursing Observation | Any cell | Shorts/boxers, T-shirt, socks, blue denim jeans, blue chambray shirt or jumpsuit, toiletries, safety blanket/bed linen, safety mattress, prescribed health care appliance and Reading/writing materials. |

2.  A clinician, when writing orders, shall utilize the above guidelines.  If a patient receives less than all items as detailed above, based on clinical judgment, a psychiatrist or psychologist shall:

- Ensure issuance of property is individualized based upon the patient's clinical needs.  Do not default to providing minimal items.

- Clearly state on the MH Patient Issue Order which items the patient may not have and document the clinical rationale.

- Re-evaluate the patient and status of issued items every 24 hours.  Limitations may continue as long as clinically indicated.

- Document the clinical rationale for issuance of less than the full complement of state-owned property as detailed above on a Mental Health Progress Note every 24 hours, for the duration of limited issuance.

- MH Patient Issue order requisition shall be placed on the patient's door so that all staff, including custody, are aware of the orders.

3.  If ordered, meals may be served with ecotensil spoons.

AGO 001718



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 10:  Clinical Restraint and Seclusion**

| Section 10 | *Clinical Restraint and Seclusion* |
|---|---|

### I.   PURPOSE:

To ensure that the use of restraints and/or seclusion are used to protect the safety of patient, who poses an immediate danger to themselves or others, by restricting their ability to inflict injury by limiting body movement or by containing them in a safe environment.

### II.   REFERENCES:

MHSDS Program Guide, Chapter 5 Mental Health Crisis Bed
Health and Safety Code 1180

### III.   PROCEDURE:

#### A.  Overview

1.  Restraint and/or seclusion are special treatment procedures used to protect the safety of patient, who pose an immediate danger to themselves or others, by restricting their ability to inflict injury by limiting body movement or by containing them in a safe environment.  While utilization of restraint and/or seclusion is clearly effective in saving lives and preventing serious injury, it is also a procedure with inherent risks.

2.  Restraints and/or seclusion shall be used only as a last resort and in response to an emergency to protect the patient and/or others from imminent harm, after less-intrusive and non-physical interventions have been attempted or ruled out.  Staff shall strive to minimize or eliminate the use of seclusion or restraint whenever possible, through proper training, thorough assessment, effective treatment planning, and continuous quality improvement efforts.

3.  The form of restraint and/or seclusion selected shall be the least restrictive level necessary to contain the emerging crisis/dangerous behavior.  The determination of the presence of an emergent situation rests upon the clinical judgment of staff.  It does not require the staff to defer restraint or seclusion until dangerous behavior occurs but may be based upon knowledge of the patient and its predictive value.

4.  Restraint and/or seclusion shall never be used as punishment or for the convenience of staff.  Threatening patient with restraint and/or seclusion is considered psychological abuse and is prohibited.  It may be appropriate to inform a patient when behavior may necessitate the use of restraints or placement into seclusion.

5.  This policy expressly prohibits any form of as needed (PRN) or standing order for restraint or seclusion.

6.  For the purpose of this policy, authorized clinician means a psychiatrist or licensed psychologist.

7.  Per CCR Title 22, a "qualified RN" is a RN who has received training in the administration of restraints and placement into seclusion, and who has passed a competency examination, which includes assessment of clinical issues relevant to the use of restraint and/or seclusion.

8.  Restraint beds are located in the observation rooms, allowing for direct observation.  Restraints shall not be used in any other area within the CTC.

AGO 001719



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 10:  Clinical Restraint and Seclusion**

### B.  Clinical Restraints

1.  Initial and Subsequent Orders

Restraints shall only be used on a written or verbal order of an authorized clinician.  When an authorized clinician is present, the authorized clinician shall evaluate the need for restraints, and if appropriate, write an order and provide sufficient and adequate justification in the patient's inpatient record.

In an emergency circumstance, when no authorized clinician is available, a qualified RN may authorize initiation of restraints.  An emergency circumstance exists when there is a sudden marked change in the patient's behavior so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to self or others, and it is impractical to first obtain an order from an authorized clinician.

When no authorized clinician is present, a qualified RN shall evaluate the need for restraints and implement restraints if appropriate.  If an RN is not present, an RN shall be notified immediately and shall respond within 15 minutes of notification to evaluate the need for restraints and initiate restraints, if appropriate.  When an RN initiates restraints, an authorized clinician shall immediately be notified.  Within one hour of notification, an authorized clinician shall give verbal or written orders (with justification) to either continue or discontinue restraints.

If the authorized clinician is not available for the initial assessment, a phone order shall be secured to cover the restraint use and the nurse shall do an initial assessment within one hour.  The initial order for restraint shall not exceed four hours.  Subsequent orders for continuation of restraint shall not exceed four hours.  Each order must specify the behavioral conduct requiring restraint and the type of restraint used.  While a restraint order is valid for four hours, no patient shall be in restraint for longer than the time necessary to contain the dangerous behavior.  Removal from restraints is an authorized clinician or RN determination, and does not require a physician's order unless otherwise specified.

2.  Assessment by Authorized Clinicians and Qualified RN's

Prior to expiration of the initial order, an authorized clinician or qualified RN shall conduct a face-to-face evaluation to determine whether continued placement into restraints is clinically justified.  If the clinician performing the initial face-to-face assessment is not a psychiatrist/physician, within four hours of the initial order a psychiatrist/physician shall be contacted/consulted by the RN to review current medications and any contraindications to continued restraint.

An authorized clinician or a qualified RN shall conduct a face-to-face evaluation at least every 8 hours during the period an patient is in restraints.  An authorized clinician shall evaluate the patient face-to-face at least every 24 after the first four hours.  If the authorized clinician is not a physician, the authorized clinician should consult with a physician after the face-to-face assessment.  A psychiatrist shall conduct a face-to-face evaluation at least every 24 hours while the patient is in clinical restraints.

A physician or nurse practitioner shall perform a brief physical examination of the patient as soon as possible but no more than four hours after the initiation of restraint use and document the evaluation on a progress note in the inpatient record.    The physician/nurse practitioner's assessment shall include inquiring into any history of physical disability or any other condition which would place the patient at greater physical or psychological risk during the restraint procedure.  If the use of restraints is discontinued prior to the physician's arrival, the physician shall conduct a brief physical examination no more than 24 hours after the episode of restraint use.

AGO 001720



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 10: Clinical Restraint and Seclusion**

3. Documentation

Documentation of an order for the use of restraints shall include the name of the authorized clinician giving the order, the time the order was received, the duration of the order, which is not to exceed four (4) hours, the type of restraint to be used, and the name and signature of the RN receiving the order.

The Initial telephone orders for restraint shall be received only by licensed nursing staff, who shall record them immediately. The ordering authorized clinician shall sign them within 24 hours. Likewise, subsequent telephone orders for restraint shall be signed within 24 hours of the time the orders were given.

This policy requires the clinician ordering the restraint to provide a written order authorizing the use of restraint even if such use is discontinued prior to the authorized clinician's arrival.

Each time a verbal order for restraint is written, the nurse shall complete a Interdisciplinary Progress Note, documenting the need for initiation/continuation of restraint and shall specify the elements for the emergency that necessitated the use of restraint and behavior changes that may indicate the patient no longer presents a danger to self or others. The note shall describe any less restrictive measures that were implemented prior to this order.

Results of face-to-face evaluations shall be documented in the health record.

When a qualified RN initiates restraint, the RN shall document the need for the initiation of restraint in the health record. The documentation shall include a description of the patient's behavior including any precursor/antecedent behaviors and other relevant factors upon which the patient was determined to be a danger to self or others, staff actions taken to utilize alternatives to restraint, information given to the patient about the reasons for restraint, the conditions of release, the patient's response, and injuries to the patient.

The use of restraints requires the patient's treatment plan be modified to include a sufficiently detailed description of the emergency and the rationale for the use of the specific degree of restraint. The patient's nursing care plan shall be modified to provide for the special needs of the patient while in restraint and/or seclusion. The criteria for establishing termination should be described in operational, objective terms comprehensible to the patient.

4. Types of Restraint

- Five-point:     All four (4) extremities and waist (note below on use of five-point restraints)
- Four-point:     All four (4) extremities
- Two-point:      Upper extremities only

Four, five, or two-point restraints shall be used by clinical staff when ordered. Patients shall only be restrained with the least amount of restraints necessary. Five-point restraints will only be used after the patient has been unsuccessfully restrained in four-point restraints or a determination is made by the RN that a fifth restraint is needed to ensure the safety of the patient. The physician on-call and the Nursing Supervisor must be notified anytime five-point restraints are utilized.

5. Restraint Renewal

The RN shall contact an authorized clinician and provide a description of current behavior, attitudes, or other indicators of present dangerousness; PRN/emergency medication usage; change in vital signs, including pain assessment; changes in mental or physical status; and side effects (e.g., confusion, akathisia, or extraphyramidal) at least every four (4) hours.

The authorized clinician shall then either give an order to discontinue restraint or give an order to continue or modify restraint for a period not to exceed four (4) hours.



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 10:  Clinical Restraint and Seclusion**

6.  Termination

Restraint shall be terminated when:

a.  The emergency or dangerous behavior no longer exists based on previously established criteria for release; or

b.  The patient's identified precursor behaviors indicating imminent danger to self or others are no longer present; or

c.  Due to the presence of medical contraindications, it would be harmful for the patient to remain in restraints.

Removal from restraints is an authorized clinician or RN determination that the patient has reached the behavioral criteria for release and no longer presents an imminent danger.  Release does not require a physician's order unless otherwise specified.

Upon termination of the restraint use, the condition and response of the patient shall be documented on a progress note in the health record.

In accordance with Health and Safety Code 1180, a clinical and quality review shall be conducted for each episode of the use of restraints.

**C. Seclusion**

Seclusion is a behavioral treatment procedure used to prevent injury to self or others by containment of the patient in a specially designed room.  Seclusion will take place in the seclusion rooms in the CTC.

1.  Initial and Subsequent Orders

Seclusion shall only be used on a written or verbal order of an authorized clinician.  When an authorized clinician is present, the authorized clinician shall evaluate the need for seclusion and if appropriate, write an order and provide sufficient and adequate justification in the patient's inpatient record.  The initial order for seclusion shall not exceed four hours.

In an emergency circumstance when there is no authorized clinician present, a qualified RN may authorize initiation of seclusion after evaluating the need for seclusion.  An emergency circumstance exists when there is a sudden marked change in the patient's behavior so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to self or others, and it is impractical to first obtain an order from an authorized clinician.  If an RN is not present, an RN shall be notified immediately and shall respond within 15 minutes of notification to evaluate the need for seclusion and initiate seclusion, if appropriate.  When an RN initiates seclusion, an authorized clinician shall immediately be notified, and within one hour of notification writes or gives a verbal order with justification to either continue or discontinue seclusion.

Subsequent orders for continuation of seclusion shall not exceed four hours.

2.  Documentation

Documentation of an order for seclusion shall include the name of the authorized clinician giving the order, the time the order was received, the duration of the order, and the name and signature of the RN receiving the order.

Telephone orders for seclusion shall be received only by licensed nursing staff, shall be recorded immediately, and shall be signed within 24 hours.  Initial telephone orders for seclusion shall be followed with written orders within 24 hours of the time the seclusion was first ordered.  The ordering clinician shall follow subsequent telephone orders for seclusion with written orders within 24 hours.



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 10:  Clinical Restraint and Seclusion**

A written order authorizing the use of seclusion is required even if such use is discontinued prior to the authorized clinician's arrival.

Each time an order for seclusion is written; the authorized clinician or RN shall complete an Interdisciplinary Progress Note documenting the need for initiation/continuation of seclusion and shall specify the elements of the emergency that necessitated the use of seclusion and behavior changes that may indicate the patient no longer presents a danger to self or others.  The note shall describe what least restrictive measures were tried prior to this order.

Results of face-to-face evaluations shall be documented in the health record.

When a qualified RN initiates seclusion, the RN shall document the need for the initiation of seclusion in the health record.  The documentation shall include a description of the patient's behavior including any precursor/antecedent behaviors and other relevant factors upon which the patient was determined to be a danger to self or others, staff actions taken to utilize alternatives to seclusion, information given to the patient about the reasons for seclusion, the conditions of release, the patient's response, and injuries to the patient.

The patient's treatment plan must be modified to include a sufficiently detailed description of the emergency and the rationale for the use of seclusion.  The patient's nursing care plan shall be modified to provide for the special needs of the patient while in seclusion.  The criteria for establishing termination should be described in operational, objective terms comprehensible to the patient.

3.  Monitoring and Evaluation by Nursing Staff

Prior to the expiration of the initial order an authorized clinician or qualified RN shall conduct a face-to-face evaluation to determine whether continued placement in seclusion is clinically justified.  If the clinician performing the initial face-to-face assessment is not a psychiatrist/physician, within four (4) hours of the initial order a psychiatrist/physician shall be consulted by the RN to review current medications and any contraindications to continued seclusion.  The authorized clinician shall either give an order to discontinue seclusion or give an order to continue seclusion for a period not to exceed four hours.

After the initial face-to-face evaluation, an authorized clinician or a qualified RN shall conduct a face-to-face evaluation at least every eight (8) hours during the period an patient is in seclusion and evaluated for continued dangerousness by an authorized clinician at least daily.  The authorized clinician shall then either give an order to discontinue seclusion or give an order to continue seclusion for a period not to exceed four hours.

An authorized clinician shall evaluate the patient face-to-face at least every 24 after the first four hours. If the authorized clinician is not a physician, the authorized clinician should consult with a physician after the face-to-face assessment.  A psychiatrist shall conduct a face-to-face evaluation at least every 24 hours while the patient is in clinical seclusion.

4.  Termination

Seclusion shall be terminated when:

a.  The emergency or dangerous behavior no longer exists based on previously established criteria for release; or

b.  The patient's identified precursor behaviors indicating imminent danger to self or others are no longer present; or

c.  Due to the presence of medical contraindications, it would be harmful for the patient to remain in seclusion.



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 10:  Clinical Restraint and Seclusion**

Removal from the seclusion is an authorized clinician or RN determination that the patient has reached the behavioral criteria for release and no longer presents an imminent danger.  Release does not require a physician's order unless otherwise specified.

Upon termination of the seclusion use, the patient's condition and response shall be documented on a progress note.

In accordance with Health and Safety Code 1180, a clinical and quality review shall be conducted for each episode of the use of seclusion.

AGO 001724



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
Section 11: Patient Care

| Section 11 | Patient Care |
|---|---|

## I. PURPOSE:

Staff shall observe, monitor, assess and provide continuous care to all patients admitted to the CTC.

## II. REFERENCES:

- CCR, Title 22, Section 79611, 79741(b), 79747, 79749
- MHSDS Program Guide, Chapter 5 Mental Health Crisis Bed

## III. PROCEDURE:

### A. Intake Assessment

MH PC Initial Evaluation is completed by the referring clinician at the time of referral and no later than 24 hours after admission.

### B. Case Reviews/Treatment Plan Update

1. Daily Assessments: A patient's condition shall be assessed and monitored daily by the treating clinician, either a psychiatrist, psychologist or licensed clinical social worker.

2. Treatment Plan: The IDTT shall review each patient as often as necessary, but at least every seven (7) days and update the treatment plan accordingly. Each treatment plan update shall include the following:

   a. Documentation of the patient's response to treatment and his/her progress or lack of progress towards the goals of treatment.

   b. Evaluation of factors that hinder progress and the interventions planned by the team to facilitate progress.

   c. The most recent diagnoses and description of the main presenting problems.

   d. Evaluation of risk factors.

   e. Review of release or discharge plans.

### C. Treatment Services

The CTC Clinical Director or designee shall be responsible for the prompt care and treatment of each patient admitted to the CTC, development and implementation of a treatment plan, completeness and accuracy of the inpatient record, necessary special instructions, and transmitting reports of the patient's condition. Whenever these responsibilities are delegated to another staff member, continuity shall be ensured by the CTC Clinical Director.

1. Medication Evaluation and Management - The assigned psychiatrist shall evaluate each patient individually at least every three days or more often as the patient's condition requires it, to address psychiatric medication issues. Progress notes shall document each visit and shall be accurately dated, timed and authenticated by signature.

2. Nursing Care – Twenty-four hour nursing care is provided in the CTC to administer and supervise medication, provide assistance for activities of daily living, observe and monitor patients, obtain all physician-ordered laboratory studies, and provide counseling or patient supervision as needed.



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 11:  Patient Care**

3.  <u>Therapy and Counseling</u> - One-to-one intervention is often necessary in a crisis case.  Usually, brief, intensive therapy is helpful if it focuses on issues that precipitated the admission and explores changes in behaviors, perceptions and expectations that facilitate coping with the crisis.  Group therapy may be provided to patients, consistent with clinical needs.

4.  <u>Rehabilitation Therapy</u> – Patients may participate in rehabilitation therapy activities, consistent with clinical needs.  Rehabilitation therapy may include activities such as indoor or outdoor recreation.  These activities provide a setting for additional observation of patients allowing for the evaluation of exaggerated symptoms or severe symptoms that are masked.

5.  <u>Physician Services</u> – Medical examination and treatment shall be performed by a physician as often as indicated by the medical needs of the patient.

AGO 001726



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 12:  Private Party Requests**

| Section 12 | *Private Party Requests* |
|---|---|

**I.   PURPOSE:**
The purpose of this policy is to address outside psychiatric consultations requests and the patient's right to refuse.

**II.   REFERENCES:**
CCR, Title 15, Section 3363

**III.   PROCEDURE:**

**A.  Private Party Requests**

1. When a patient or a patient's guardian or relative, or an attorney or other interested party desires to have a patient examined by a private psychiatrist or other mental health professional, a request may be submitted in writing by such person or persons to the clinical director.  After consulting with the Chief of Mental Health, the clinical director may grant the request unless there are specific case factors which warrant denial.

2. If the report is denied, the person making the request shall be notified in writing of the reason for the denial and the right to appeal the decision.  Any financial responsibility or obligation for private consultations or examinations is assumed by the patient or the person requesting the service.

3. Private consultants will not be permitted to order mental health treatment for a patient.  However, the private consultant may be asked to make a report of findings and recommendations to the Chief of Mental Health and/or clinical director.

**B.  Right To Refuse Treatment**

Patients are informed any time they have the right to refuse examination by a private psychiatrist or other mental health professional, except when the mental health evaluation or treatment is required by law or ordered by a court.

AGO 001727



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 13:  Recreational Therapy**

| Section 13 | Recreational Therapy |
|---|---|

### I.   PURPOSE:
The purpose of this policy is to define the role of the Recreation Therapist in the CTC.

### II.   REFERENCES:
- CCR, Title 22, Section 79749
- MHSDS Program Guide, Chapter 4 Enhanced Outpatient Program

### III.   PROCEDURE:

#### A.  Recreation Therapy Services

Recreation Therapy Services specifically promotes the development of appropriate self-care skills, impulse control, problem solving and coping strategies, the enhancement of appropriate self-expression, as well as interpersonal and social skills development.  Recreation Therapy assessment and interventions shall also address patient psycho-motor functioning and development.

1.  The Recreation Therapist shall assess each patient and develop recreation goals as part of the treatment team process.

2.  The Recreation Therapist or designee shall schedule and lead individual activities/groups.

3.  The Recreation Therapist shall ensure that recreation materials are available for patients' use, and shall oversee the setting-up of materials and give instruction in their use.

4.  The Recreation Therapist shall interact with patients, model appropriate social interaction, maintain an atmosphere of cooperation and, through appropriate interventions, prevent the escalation of personal patient conflicts.

5.  Recreation Therapy activities shall be scheduled based on the patient's level of functioning and needs. This will be determined by the interdisciplinary treatment team which includes the recreation therapist.

6.  The Recreation Therapist shall document individual progress notes in the inpatient charts.

7.  Each patient shall be prescribed a recommended individual activity plan which shall be included as part of the multi-disciplinary treatment plan.

8.  All individual activities shall follow the activity schedule approved by the Recreation Therapist.

9.  Each patient will be offered the opportunity to participate in the CTC recreation activity program.

10. Patients must be cleared by the CTC Lieutenant prior to participation in large outdoor group yard.

#### B.  Physical Health

The Recreation Therapy plan provides each participating patient with a supervised exercise program designed to stimulate and support physical and mental capabilities, increase motor coordination skills, improve physical fitness, decrease depression, anxiety and stress, and promote maintenance of physical health.

AGO 001728



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 13: Recreational Therapy**

### C. Creative Expression

Through the use of exploration of creative arts media, patients learn to appropriately channel self-destructive, aggressive behavior and develop social insight. Creative expression interventions are designed to promote patient adjustment to custody, enhance coping skills, and enhance constructive decision making and personal responsibility through creative problem solving.

### D. Leisure Time Activities

The Recreation Therapist shall educate each participating patient concerning the importance and constructive use and planning of leisure time activities and the necessity to develop a meaningful repertoire of leisure skills.

### E. Social Skills Activities

Through the use of therapeutic groups and intervention, the patient will develop skills in appropriate socialization and increased ability to express feelings and needs constructively. Assertiveness compared to aggressiveness techniques will be addressed.

### F. Reading Material

1. Receiving reading material is a therapeutic decision and is not a licensing or treatment requirement.

2. Patients will be approved for reading material in their room by a licensed psychologist or psychiatrist. Approval for reading material shall be documented on the MH Patient Issue order.

3. All patients approved to have books may select the type of book he desires to read from the selection provided.

4. Recreation Therapy shall maintain a list of the approved books that are contained in the library.

5. Any books that are donated to the CTC Library must be approved by the Community Resource Manager or Public Information Officer at the institution prior to being issued to a patient.

6. Newspapers and magazines without staples are permitted for patient use.

AGO 001729



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 14:  Psychiatric Observation and Seclusion Room**

| **Section 14** | **Psychiatric Observation and Seclusion Room** |
|---|---|

### I.  PURPOSE:

The purpose of this policy is to define the psychiatric observation procedures.

### II.  REFERENCES:

- CCR, Title 22, Section 79761
- CCR, Title 24 Section 424A.23.2

### III.  PROCEDURE:

Space in the form of a dedicated Observation Room or Seclusion Room shall be provided for acutely disturbed patients.

#### A.  Observation Rooms and Seclusion Rooms

1. Any clinical staff may recommend psychiatric placement in the Observation Room or Seclusion Room.  These rooms shall be used for, but not limited, to the following:

   - Acute risk of self-injurious behavior
   - Immediate danger to others
   - Restraints or seclusion
   - Other clinically ordered observation

2. Orders shall be obtained to place a patient in either the Observation Room or Seclusion Room and the frequency of observation shall also be ordered.

3. To provide for the safety of the patient and others, the clinician may order that all furniture, clothing, linen, and other objects that may cause injury be removed.

4. Record the date, time and reason for initiating psychiatric observation in the health record.

5. Nursing staff shall observe the patient at the frequency indicated in the doctor's orders.  Describe specific patient behaviors when charting.

6. Clinical staff shall document the patient's progress and include the criteria for release from observation and an estimated length of stay in the Observation or Seclusion Room on an Interdisciplinary Progress Note.

7. Nursing staff shall provide assistance with activities of daily living, including personal hygiene as clinically appropriate.

8. Patients in psychiatric observation may continue to attend available activities if clinically indicated and approved by the IDTT.

AGO 001730



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 15:  Video Monitoring**

| Section 15 | Video Monitoring |
|---|---|

**I.  PURPOSE:**

To define the use of video monitoring for patients who require suicide watch observations in the CTC.

**II.  REFERENCES:**

- CCR, Title 22, Section 79513, 79751
- MHSDS Program Guide, Chapter 10 Suicide Prevention and Response
- CTC P&P Chapter 3, Section 9 Suicide Watch and Suicide Precaution

**III.  PROCEDURE:**

Video-monitoring shall never be used as the sole method for observation of any patient housed on Suicide Watch status, but may be used to supplement direct visual observation if appropriate equipment is available.

AGO 001731



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 16:  Staff Work Space and Supplies**

| Section 16 | Staff Work Space and Supplies |
|---|---|

### I.   PURPOSE:

To ensure the proper amount of work space and supplies is provided to those staff providing direct patient care.

### II.   REFERENCES:

CCR, Title 22 Section 79615

### III.   PROCEDURE:

#### A. Psychiatrist/Psychologist

Sufficient space shall be maintained to meet the needs of the service, including:

1. Suitable space for interviewing

2. Office Space

#### B. Mental Health Treatment Program Space

1. Space shall be provided for the conduct of the mental health treatment program and shall include:

   a. A consultation room for interviewing.

   b. An observation room for acutely disturbed patients.

   c. Indoor or outdoor facilities for therapeutic activities.

AGO 001732



**California Men's Colony Health Care Services**
**Correctional Treatment Center Policies and Procedures**
**Chapter 3 Mental Health Policy & Procedures**
**Section 16: Staff Work Space and Supplies**

**POLICIES APPROVED:**

_____        _10/12/17_
CTC PATIENT CARE COMMITTEE                        DATE

_____        _11/29/17_
QUALITY MANAGEMENT COMMITTEE                      DATE

_____        _11/29/17_
GOVERNING BODY                                    DATE

AGO 001733