ROB BONTA  
Attorney General of California  
CHAD A. STEGEMAN  
Supervising Deputy Attorney General  
CORINNA S. ARBITER  
Deputy Attorney General  
State Bar No. 273074  
 600 West Broadway, Suite 1800  
 San Diego, CA 92101  
 P.O. Box 85266  
 San Diego, CA 92186-5266  
 Telephone: (619) 321-5799  
 Fax: (619) 645-2061  
 E-mail: Corinna.Arbiter@doj.ca.gov  
*Attorneys for Defendants*  
*J. Gastelo*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| ESTATE OF ALEXANDRE TOULOUDJIAN, et al., <br><br>　　　　　　　　　Plaintiff, <br><br>　v. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., <br><br>　　　　　　　　　Defendants. | 2:20-cv-00520-FLA-KS <br><br> **DECLARATION OF M. ROCHA, JR. IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

I, M. Rocha, Jr. declare:

1. I am an Associate Warden at California Men's Colony (CMC). I have held this position from December 2022 to the present. I have been working in the California Department of Corrections and Rehabilitation (CDCR) for 27 years. I began my career with CDCR as a correctional officer at Corcoran State Prison. Later the same year I transferred to North Kern State Prison (NKSP). I remained at NKSP for nine years. Five of the nine years at NKSP I was assigned to the Investigative Services Unit as an Investigative Officer. I promoted to sergeant for one year at NKSP, and then transferred to CMC, where, after four years, I was promoted to a correctional lieutenant. Four years later, I was promoted to appeals coordinator and worked in that position for two more years. I was then promoted to correctional captain and worked that position for eight years. In January 2018, I was the acting associate warden for the Mental Health Crisis Bed Unit (MHCB) at CMC. I have personal knowledge of the facts stated below and if called as a witness, I would competently testify to them.

2. As the Acting Associate warden of the MHCB, I managed and indirectly supervised custody staff working in the MHCB.

3. I also reviewed former inmate Alexandre's Touloudjian's bed assignment history which reveals that upon arriving at CMC on January 12, 2018, Mr. Touloudjian was assigned to MHCB H 001A1 Bed 016001L. Mr. Touldoudian was housed in Tier A of the MHCB while at CMC. This means that Mr. Touloudjian was housed in the MHCB on Tier A in bed #01600.

4. I reviewed the sign in/sign out sheets (FLSA) for custody staff working at the MHCB between January 12, 2018, and January 21, 2018 attached as **Exhibit 4** to the Declaration of S. Pennisi concurrently filed herewith.

5. I reviewed the post orders for the officers assigned to MHCB Tier A. Post orders establish the roles and responsibilities for custody staff assignments to specific locations in a prison attached as **Exhibit 5** to the Declaration of S. Pennisi

2

1 concurrently filed herewith

2   6.   From my review of the FLSAs and the post orders for Tier A, I was able to determine that custody staff assigned Tier A from January 12, 2018, to January 21, 2018 were Officers Holman, Sedgwick, Fitzpatrick, Castillo, Esquivias, Borges, Jacobs, Kopcho, Cavan, Kestler, Kelly, Simpson, Marks, Salazar, Gonzales, Roinestad, Lomeli, Florentino, Romero, Perez, Wern, Webb, Scott, Cornejo, Soto, Strader, Zeno, Nelson, Leyva, Umphenour, Torres, and Kent.

7.   From my review of the post orders for custody staff assigned to the tier on which Mr. Touloudjian was housed, I have determined that custody staff did not:

   a.   assess the mental health of Mr. Touloudjian;

   b.   create treatment plans for Mr. Touloudjian;

   c.   determine how often Mr. Touloudjian was seen by medical or clinical staff;

   d.   determine what medication he was given, or what to do if Mr. Touloudjian refused medication;

   e.   perform rounds on Mr. Touloudjian for suicide precaution.

8.   Custody staff provided coverage to medical staff who delivered meals and medication to inmates housed within the MHCB but they did not plan or prepare the meals, nor did they administer medication to the inmates.

9.   I have reviewed the incident report related to Mr. Touloudjian's suicide attempt on January 21, 2018 attached as Exhibit 3 to the Declaration of S. Pennisi. After the nurse who found Mr. Touloudjian unresponsive called a code, custody staff who were at the officers podium behind the nurse station, and around a corner from Tier A, went to Mr. Touloudjian's cell to allow entry. (*See* Incident Report attached as **Exhibit 3** to Declaration of S. Pennisi at AGO 001607-1614). A nurse reported removing a long plastic object from Mr. Touloudjian's throat after initiating life-saving measures. (*See Id.* at AGO 001630.) With respect to the means Mr. Touloudjian used to commit suicide at CMC, it appears that he used

3

1  state issued cellophane wrapped bread. (*See* Incident Report attached as **Exhibit 3**
2  to Declaration of S. Pennisi at AGO 001590, 001605, 001606, 1628, 1630).
3       I declare under penalty of perjury that the foregoing is true and correct to the best of my
4  knowledge. Signed this 30th day of June in San Luis Obispo, California.
   Dated:     June 30, 2023
5                                                         _____
6                                                         M. Rocha, Jr.
                                                          Associate Warden
7                                                         California Men's Colony.
8  SA2020101463
   USDC Central (2 Party) no cover.docx
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28