Keith Altman (SBN 257309)
THE LAW OFFICE OF KEITH ALTMAN
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48334
(248) 987-8929
keithaltman@kaltmanlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **ESTATE OF ALEXANDRE TOULOUDJIAN, et al.,**<br><br>Plaintiff,<br><br>vs.<br><br>**JOSIE GASTELO, in her individual capacity,**<br><br>Defendants. | 2:20-cv-0520-FLA-KS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: 08/18/2023<br>Time: 1:30 p.m.<br>Courtroom: 43<br>Judge: Hon. Fernando L. Aenlle-Rocha |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF 98)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii
INTRODUCTION ........................................................................................................ 1
PROCEDURAL HISTORY ......................................................................................... 1
ADDITIONAL STATEMENT OF FACTS ................................................................. 1
LEGAL STANDARD .................................................................................................. 3
ARGUMENT ................................................................................................................ 3
    I.    GASTELO HAS NO SUPERVISORY LIABILITY FOR THE ALLEGED CONSTITUTIONAL VIOLATIONS. ............................................................. 3
        A.    Standard for Supervisory Liability. ............................................................ 3
        B.    Analysis of Supervisory Liabilty. ............................................................... 3
            1. Gastelo Maintains Supervisory Liability for Constitutional Violations ..... 3
    II.    SURVIVOR CLAIM ........................................................................................ 5
    III.    IMMUNITY ................................................................................................... 5
    IV.    PENDING MOTION TO AMEND ............................................................... 6
CONCLUSION ............................................................................................................. 7
CERTIFICATE OF COMPLIANCE ........................................................................... 8
CERTIFICATE OF SERVICE ..................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) 4

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................. 5, 6

*Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) ............................... 4

*Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ................................................... 4

*Procunier v. Navarette*, 434 U.S. 555, 565 (1978) ..................................................... 5

*Sepulveda v. Lee*, No. ED CV 10-1705-CAS (PJW), 2011 U.S. Dist. LEXIS
    116548, at *12-13 (C.D. Cal. July 27, 2011) ......................................................... 4

*Wheeler v. City of Santa Clara*, No. 16-cv-01953-RMW, 2016 U.S. Dist. LEXIS
    151388, at *5-6 (N.D. Cal. Nov. 1, 2016) ............................................................... 5

**Statutes**

Cal. Civ. Proc. Code § 377.30 ...................................................................................... 5

## INTRODUCTION

The present case is an easy one, albeit haneious. Plaintiff was a prisioner within the California Department of Corrections ("CDOC"). During his stay with the CDOC, Plaintiff suffered from suicidal ideologies. Plaintiff had attempted multiple takings of his life and was put on suicide watch and moved to a higher security area to ensure his safety.

Plaintiff's safety was not provided for. Plaintiff was provided with multiple food items that were wrapped in plastic wrap with his meal. While unsupervised with the food items, Plaintiff compacted his throat with the plastic wrapped food items and asphyxiated himself. Plaintiff had suffered brain death prior to the CDOC officers arriving at his cell.

## PROCEDURAL HISTORY

Plaintiff commenced this action on January 17, 2020. Multiple motions remain pending before the Court. Currently pending are the present Motion for Summary Judgment, a Motion to Amend the Complaint, a Motion for an Extension of the Discovery Deadline for 30(b)(6) Depositions, and a Motion for an Extension of Time to File the present response.

At the time of Defendant's filing of the present motion, discovery had not been completed. During the remaining depositions completed by the Parties, additional information came to light that is of significant importance to the Parties claims and defenses.

Nevertheless, Plaintiff proceeds with the opposition to Defendant's current motion to dismiss as presented.

## ADDITIONAL STATEMENT OF FACTS

The way in which inmates are housed in the institution falls under the supervisory umbrella of Defendant Gastelo. (<u>Exhibit A</u>, Gastel Dep. pg. 13-14). The guards who are responsible for managing and monitoryting mental health inmates

1 falls under the supervisory umbrella of Defendant Gastelo. (Exhibit A, Gastelo Dep. pg. 14). Food service falls under the control of the Warden, Gastelo. (Exhibit B, Rocha Dep. pg. 13).

On January 11, 2018 Plaintiff was placed on suicide watch after jumping off of a second floor tier balcony with the intent to die. (Exhibit E, Involuntary Medication Notice, AGO 002001). Subsequently, on January 13, 2018 Plaintiff was transferred to California Men's Colony: Mental Health Crisis Beds Facility ("CMC"). Plaintiff was placed on a 1:1 watch safety protocol after the first suicide attempt. (Exhibit C, Hithal Dep. pg. 12). Plaintiff was to have someone outside of his cell 24 hours a day until released from suicide watch. (*Id*.). While at CMC Plaintiff was not showing signs towards recovery, was refusing to take psychiatric medications and his symptoms were worsening. (Exhibit E, Involuntary Medication Notice, AGO 002002). As as a result, On January 17, 2018 Dr. Joshua Elliott prepared and submitted documentation for an involuntary medication order from the Court for the Plaintiff. (Exhibit B, Rocha Dep. pg. 15; Exhibit E, Involuntary Medication Notice). Dr. Elliot's documentation in the paperwork for the involuntary medication order shows that CMC was aware that Plaintiff had previous mental health hospitalizations in 2015.(Exhibit E).During his time at CMC Plaintiff was placed on plastic safety restrictions by CMC staff, amongst other suicide safety protocols. (*Id*.). Defendant Gastelo agrees, if the directive stated that no pastic should be given, the officer should not have given Plaintiff cellophane with his meals. (Exhibit A, Gastelo Dep., pg. 68).

Plaintiff was not the first inmate to attempt suicide by the means of injesting cellophane. (Exhibit D, Carda Dep. pg. 18, 23). Death by cellophane injestion is easily preventable. (*Id*.).

Plaintiff was never supposed to receive cellophane. (Exhibit D, Carda Dep. pg. 22).

## LEGAL STANDARD

Plaintiff agrees with Defendant's stated Motion for Summary Judgment standard.

## ARGUMENT

Prisoners do not check their rights at the door of the prison upon entry. As a result of the Defendant's failures, Plaintiff was knowingly provided with restricted items that resulted in the taking of his own life by haneous means.

### I. GASTELO HAS NO SUPERVISORY LIABILITY FOR THE ALLEGED CONSTITUTIONAL VIOLATIONS.

**A. Standard for Supervisory Liability.**

Plaintiff agrees with Defendant's standard for supervisor liability.

**B. Analysis of Supervisory Liabilty.**

   **1. Gastelo Maintains Supervisory Liability for Constitutional Violations.**

Defendant Gastelo was the Warden for the CMC, the prison in which Plaintiff was housed when Plaintiff made the suicide attempt January 21, 2018, which ultimately ended his life. While under the care of CMC and Defendant Gastelo's staff, Plaintiff was provided with cellophane with his food delivery. The custody staff should have examined the food tray to ensure its compliance with safety protocols that were in place prior to providing it to the Plaintiff. The prison staff members, under the supervision of Defendant Gastelo, failed to follow policy and procedures put in place for the safety of the inmates and as a direct result Plaintiff died.

In order to impose liability under section 1983 on an individual defendant, the defendant's act or omission must cause the deprivation of the plaintiff's constitutional rights. The element of causation is "individualized and focuses on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th

1  Cir. 1988). Gastelo failed to supervise her employees when she allowed CMC staff
2  to violate policies and procedures that directly led to Plaitniff's death.

3        Gastelo attempts to hide behind the technical terminology of the CCI
4  departments. An unsuccessful tactic. Defendant Gastelo provides that she supervised
5  custody staff, not clinicial staff. Even if that were true, it does not obsolve her from
6  liability on that matter. Custody staff provided Plaintiff with cellophone wrapped
7  food. It was the custody staff's responsibility to review the contents of the food tray
8  to ensure that it was in compliance with all safety protocols in place before providing
9  it to the inmate. Custody staff were indifferent to the medical needs of Plaintiff as
10 stated in the directives. The custody stuff failed to follow protocols and Plaintiff's
11 directives and provided him with cellophane resulting in his death.

12       To state a claim for "deliberate indifference," a prisoner must allege: (1) a
13 purposeful act or failure to respond to a prisoner's pain or medical need; and (2) harm
14 caused by the indifference. *Sepulveda v. Lee*, No. ED CV 10-1705-CAS (PJW), 2011
15 U.S. Dist. LEXIS 116548, at *12-13 (C.D. Cal. July 27, 2011).

16       "[Deliberate indifference] may appear when prison officials deny, delay or
17 intentionally interfere with medical treatment, or it may be shown by the way in
18 which prison physicians provide medical care." *Hutchinson v. United States*, 838
19 F.2d 390, 394 (9th Cir. 1988).

20       A defendant, however, is only liable for denying a prisoner needed medical
21 care if he "knows of and disregards an excessive risk to inmate health or safety."
22 *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

23       Defendants expert Dr. Robert Cannings opinions on the matter are
24 underscored when the CCI itself, through Dr. Carda state that Plaintiff was never to
25 receive cellophane. (<u>Exhibit D,</u> Carda Dep. pg. 22). The inherent risk of an inmate
26 on suicide watch taking their life in this way was foreseeable as it has occurred in
27 the prison before. (*Id.*).

28       The death of Plaintff was both foreseeable and preventable.

## II. SURVIVOR CLAIM

Dismissial of Plaintiff's survivor claim is improper. Only a decedent's "personal representative" or "successor in interest" may assert a survivor claim in California. Cal. Civ. Proc. Code § 377.30*Wheeler v. City of Santa Clara*, No. 16-cv-01953-RMW, 2016 U.S. Dist. LEXIS 151388, at *5-6 (N.D. Cal. Nov. 1, 2016). Defendants do not argue that Plaintiff's estate is unable to bring a survival claim on behalf of Alexandre Touloudjian. Instead, Defendant argues only that Defendant can not be found liable for Plaintiff's death and as such the survivor claim must fail.

Plaintiff, by and through his estate, has shown that Defendant maintained control of the custody staff at the prison. Custody staff failed to follow the directives and provided Plaintiff with cellophone in direct opposition of the directive. As a result of providing Plaintiff with cellophone, Plaintiff committed suicide by ashphyiation.

## III. IMMUNITY

Defendant violated a clearly established constitutional right of the Plaintiff and as such is not immune from suit under the justification of qualified immunity.

Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Procunier v. Navarette*, 434 U.S. 555, 565 (1978).

Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. *Id*. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know"

1  that the law forbade conduct not previously identified as unlawful. *Id*. If the law was
2  clearly established, the immunity defense ordinarily should fail, since a reasonably
3  competent public official should know the law governing his conduct. *Id.*

4      Defendant Gastelo is a Warden at a prison. The Eighth Amendment is
5  engrained in our legal system with a high prevalence in the criminal justice system.
6  To state Defendant Gastelo was unaware of the constitutionally held rights of the
7  Plaintiff at the time of occurrence would be contemptuous.

8      Defendant Gastelo approves policies of the facility. (Exhibit A, Gastelo Dep.
9  pg. 30). The custody staff of the facility, which Defendant Gastelo is in charge of
10 supervising, violated Plaintiff's Eighth Amendment rights when they provided him
11 with cellophane in direct violation of directives, resulting in his death. Custody staff
12 personally and directly violated Plaintiff's Eighth Amendment rights. The custody
13 staff's conduct was not discreitionary conduct. Custody staff defied a directive,
14 provided an inmate on 1:1 suicide watch with plastic cellophane wrapped food which
15 directly resulted in his death. Custody staff need not be trained in assessment,
16 treatment and suicide prevention to follow a set directive for an inmate that is on 1:1
17 suicide watch.

18     Defendant can and should be held liable for the death of Plaintiff on her watch.

19 **IV.   PENDING MOTION TO AMEND**

20     Plaintiff maintains that the presently pending motion to amend the complaint
21 should be granted.

22     Discovery was ongoing at the time of Defendants filing the present motion for
23 summary judgment and more information is available now that could not have been
24 and was not available to the Plaintiff prior. This information includes evidence that
25 additional people were involved in violating Plaintiff's constitutional rights and
26 therefore are appropriate Defendants.

27     On May 17, 2023, Plaintiff took the deposition of Josie Gastelo. This was the
28 first available date provided for deposition with the witness. During this deposition,

Plaintiff first learned that Teresa Macias was involved in violating Plaintiff's constitutional rights and should be added as a Defendant in the present matter. Plaintiff was unaware of Teresa Macias' involvement until May 17, 2023.

Additional 30(b)(6) depositions were conducted after the filing of the motion to amend which provided fresh information that is relevant and significant to both the Plaintiff's claims and the Defendant's arguments.

## CONCLUSION

Plaintiff has met the burden of proving entitlment to relief on all claims sought before this honorable Court. All allegations and facts are to be waived in favor of the Plaintiff in deciding on summary judgment. Inasmuch as, the foregoing facts are in dispute, the Plaintiff will be severely prejudiced if the disputed facts are not presented to a jury for adjudication. Therefore, the Plaintiff respectfully prays to this honorable Court to deny Defendants' Motion for Summary Judgment in its entirety, allow Plaintiff to amend the complaint to add Defendants and reset the scheduling order bringing this matter to trial.

Dated: July 28, 2023

Respectfully Submitted,

THE LAW OFFICE OF KEITH ALTMAN

By: */s/ Keith Altman*
Keith Altman, Esq. (SBN 257309)
THE LAW OFFICE OF KEITH ALTMAN
33228 W 12 Mile Road, Suite 375
Farmington Hills, MI 48334
(248) 987-8929
keithaltman@kaltmanlaw.com

*Attorney for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this opposition brief contains 1,957 words, which:

 x  complies with the word limit of L.R. 11-6.1.

Dated: July 28, 2023

                                                                       Respectfully Submitted,

                                         By:   */s/ Keith Altman*
                                                      Keith Altman, Esq. (SBN 257309)
                                                      THE LAW OFFICE OF KEITH ALTMAN

                                                 *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished via the CM/ECF system.

*/s/ Keith Altman*
Keith Altman, Esq.