ROB BONTA
Attorney General of California
CHAD A. STEGEMAN
Supervising Deputy Attorney General
CORINNA S. ARBITER
Deputy Attorney General
State Bar No. 273074
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone:  (619) 321-5799
 Fax:  (619) 645-2061
 E-mail:  Corinna.Arbiter@doj.ca.gov
*Attorneys for Defendant*
*J. Gastelo*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| **ESTATE OF ALEXANDRE TOULOUDJIAN, et al.,**<br><br>Plaintiff,<br><br>v.<br><br>**J. GASTELO,**<br><br>Defendants. | 2:20-cv-00520-FLA-KS<br><br>**REPLY IN SUPPORT OF DEFENDANT J. GASTELO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          September 15, 2023<br>Time:         1:30 p.m.<br>Courtroom: 43<br>Judge:        Hon. Fernando L. Aenlle-Rocha<br>Trial Date:  October 31, 2023<br>Action Filed: January 17, 2020 |

Supervisory liability does not accrue to Defendant J. Gastelo for Alexandre's death; Gastelo did not supervise clinical staff or kitchen staff preparing Alexandre's meals. Alexandre was on suicide precaution in a prison hospital with clinical observation rounds being performed by nurses every 11 minutes +/- 4. He was placed in a single cell, designed to handle acutely suicidal patients. He was issued a safety smock, safety blanket, and safety mattress. He could not have street clothing. He could not have hard plastics. Psychologists were seeing him daily. He was being offered medication morning and night. A psychiatrist initiated an order to involuntarily medicate him. On the day of his suicide, nurses observed him at 1:36 p.m. pacing in his cell, and found him nine minutes later on the floor of his cell. He took his life using innocuous, everyday items—bread wrapped in cellophane.

Plaintiffs concede that Gastelo: (1) had no direct involvement with Alexandre, (2) had no supervisory liability for any issues that occurred outside California Men's Colony, (3) had no prior knowledge of Alexandre's mental health issues before he committed suicide, and (4) adequately trained custody staff under her supervision. (*See* Moving Party's Response (MPR) to dispute of SUFs 1-17 concurrently filed herewith.[1])

Plaintiffs' entire opposition rests on the incorrect premise that Gastelo has supervisory liability because staff under her supervision prepared meals for Alexandre, and that staff under her supervision should have removed plastic wrap from the food items given to Alexandre at his meals because of the clinical order for "no hard plastics." But the evidence conclusively shows that:

- Gastelo did not supervise kitchen staff that prepared meals for Alexandre; and

---

[1] Plaintiffs did not include a Statement of Disputed Facts, or file a separate Statement of Additional Facts. Defense counsel tried to identify disputed facts and Plaintiffs' evidence to support same in an effort to file the Moving Party's Response to disputed facts in compliance with Federal Rules of Civil Procedure, Local Rules, and Orders, ECF Nos. 53 and 58.

- providing food items wrapped in cellophane to Alexandre did not violate the "no hard plastics" clinical order or any other policy.

Common experience shows the light cellophane film covering bread or other food is not a "hard plastic" like a plastic knife.

Moreover, since depositions taken in July 2023, Gastelo's counsel have learned that California Men's Colony did not diverge from policy by providing food items wrapped in cellophane. Accordingly, Defendant Gastelo's Motion for Summary Judgment should be granted and judgment should be entered against Plaintiffs.

## ARGUMENT

An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). "The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Discussed *infra,* Plaintiffs have furnished no evidence to create a genuine disputed fact.

**I.   GASTELO HAS NO SUPERVISORY LIABILITY.**

    **A.   Plaintiffs' Purported Evidence that Gastelo Had Supervisory Responsibility for the MHCB Kitchen Has No Probative Value; the Evidence Shows Gastelo Did Not Have Supervisory Responsibility for the Kitchen.**

Plaintiffs do not dispute that Alexandre was placed in the mental health crisis bed unit (MHCB) when he was transferred to California Men's Colony (CMC) on January 12, 2018. (SUF No. 9.)

Plaintiffs' "evidence" that Gastelo supervised the MHCB kitchen is a cherry-picked soundbite from Assistant Warden Rocha's testimony. His full testimony

3

makes clear that the opposite is true. (*See* MPR to dispute of SUF Nos. 24, 33, 35; *see also* Response to Plaintiffs' Additional Facts (RAF) No. 38.)

Rocha testified that the MHCB *has its own food services*, which did not fall under the purview of Gastelo. (MPR to dispute of SUF Nos. 24, 33, 35; *see also* RAF 38.) Specifically, he testified as follows:

```
17 Q. (By Mr. Altman) Okay. That's fine.
18 Now, in terms of the food service in the prison, is
19 the food service in the prison under the purview of the
20 warden?
21 A. Food service as a whole, it is. However, there are areas
22 within the prison such as our hospital and our
23 Correctional Treatment Center that is -- they have their
24 own food services and prepare their own food in those
25 particular areas and that would fall under CCHCS. They
 1 have their own kitchens and diners and dietitians separate
 2 from the general population.
```

(Plaintiffs' Exhibit B, Rocha Dep. at 13:18-14:2, ECF No. 102-2.)

Similarly, Dr. Comperini, a senior psychologist at CMC in January 2018, testified:

```
18 Q. Food to Mr. Touloudjian would have been prepared by your
19 kitchen, not by the gen pop kitchen?
20 A. Correct.
21 Q. Who runs your kitchen? Is that run by Custody or by
22 mental health?
23 A. That's under medical.
```

(Declaration of Corinna S. Arbiter (Arbiter Decl.) at ¶ 3, Ex. 1, Deposition of M. Comperini at 6:3-5, 24-25, 51:14-23 (emphasis added); *see also id.* at 60:3-25.)

Registered Dietician Silva, who worked in the MHCB kitchen, provided a declaration in support of the underlying motion stating that the kitchen that prepares food for inmates in the MHCB falls under the supervision of the Health Care Services Chief Executive Officer. (SUF 33.) Given the testimony of Rocha and Comperini, and the affidavit of Silva, there is no genuine dispute that Gastelo did not supervise the MHCB kitchen.

///

///

///

### B. The Undisputed Facts Conclusively Establish that the Clinical Order "No Hard Plastics" *Did Not* Include "No Cellophane-Wrapped Food Items."

It is undisputed that Alexandre could not have "hard plastics." (SUFs 19, 35.) But Plaintiffs jump to the conclusion— without supporting evidence—that this order precluded Alexandre from receiving cellophane-wrapped food items. (*See* Opp'n at 6[2]:18-20, 7:7-9.) Plaintiffs' conclusion is patently incorrect.

Defense expert Dr. Canning, California Department of Corrections and Rehabilitations' (CDCR) Suicide Prevention Coordinator from 2005 through 2015, opines that "[t]he admonition '[n]o hard plastics in cell' does not apply to the light plastic film used to package sandwiches or crackers." (Declaration of R. Canning at ¶ 23, ECF No. 98-7.) Further, Plaintiffs' argument is illogical. Cellophane is not a "hard plastic." The ordinary definition of "hard plastic" is "any plastic that cannot be easily dented, crushed, or pierced." (*hard plastic,* Collins English Dictionary available at https://www.collinsdictionary.com/us/dictionary/english/hard-plastic, (retrieved Aug. 2, 2023).) Cellophane is easily crushed or pierced, so it is not a "hard plastic."

Gastelo did not supervise the MHCB kitchen and since cellophane is not a "hard plastic," custody staff did not violate the "no hard plastics" order by failing to remove the cellophane from food items on Alexandre's meal tray.

### C. Custody Staff Were Not Responsible for Ensuring Meal Trays Conformed to Clinical Orders.

Plaintiff asserts that custody staff delivered meal trays to MHCB patients, and thus, without any supporting evidence, assert custody staff were responsible to ensure the meal trays conformed to clinical orders and policies and procedures. (Opp'n at 7:6-10.) Testimony and other evidence demonstrate otherwise.

///

---

[2] Page numbers referenced in the Opposition correspond to page numbers assigned by the ECF system.

Gastelo testified that custody staff did not have the responsibility to ensure MHCB patient meal trays conformed to clinical orders. (*See* MPR for dispute of SUF No. 24.) Post orders define custody staffs' duties and responsibilities. (Declaration of A. Rocha (Rocha Decl.) at ¶¶ 5, 7, ECF No. 98- 6; Declaration of S. Pennisi (Pennisi Decl.) at ¶ 9.) The post orders for custody staff assigned to the MHCB in January 2018, stated in pertinent part:

> You are responsible for maintaining the order, security and supervision of inmates. You are charged with upholding the [CDCR] rules and regulations. All peace officers have the responsibility to take appropriate action during an emergency (including physical restrain) and to work assignments as necessitated…. You must conduct visual and physical inspections of your work areas. You will monitor inmate behavior and appropriately document rule violations and/or behavior that could lead to violence or disorder.

(Pennisi Decl. at ¶ 9, Ex. 5, Post Orders at pgs. 149-160, ECF No. 98-9.)

Nothing in the above post order would make custody staff understand that they should independently act to take cellophane off of food items for Alexandre.

The MHCB kitchen staff prepared meals for MHCB patients pursuant to direction from the Chief Executive Officer for Medical Services at CMC. (SUFs 33, 34.) The MHCB kitchen staff, not custody staff, were responsible to verify the meals complied with clinical orders. (See Declaration of S. Arace (Arace Decl.) at ¶ 15 and Ex. 1 at AGO009302, 9324, 9327, 9333.) Further, as discussed in Sections I(B), *supra,* and I(D), *infra,* there were no orders or policies in place that precluded giving Alexandre cellophane-wrapped food items in January, 2018. So, in no event does supervisory liability accrue to Gastelo because custody staff "delivered" meal trays to Alexandre with cellophane-wrapped food items.

### D. In January 2018, the Food and Nutrition Services Policy Did Not Preclude Providing Cellophane-Wrapped Food Items to MHCB Patients.

Plaintiff admits that Gastelo "is only liable for denying a prisoner needed medical care if [s]he 'knows of and disregards an excessive risk to inmate health or safety.'" Opp'n at 4:20-22 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

However, there was no policy in place that precluded Alexandre from receiving cellophane-wrapped food items, so Gastelo did not know of and disregard an excessive risk to Alexandre's health. On this basis too, Gastelo has no supervisory liability.

At deposition on July 20, 2023, Dr. Carda, Chief Psychologist for Statewide Suicide Prevention for CDCR, incorrectly testified that there was a departure from policy by providing food items wrapped in cellophane to Alexandre at his meals. (Plaintiffs' Ex. D, Carda Dep. at 22:3-11, ECF No. 102-4; *see also* Declaration of A. Carda (Carda Decl.) at ¶ 6.) This testimony was based on Dr. Carda's misconception that the current Food and Nutrition Services (FANS) policy precluding provision of cellophane-wrapped food items to patients in the MHCB was in effect at the time Alexandre committed suicide. (Carda Decl. at ¶ 6.) The policy was *not* in effect in January 2018. (Carda Decl. at ¶ 7, Declaration of L. Barnak (Barnak Decl.) at ¶¶ 1-7, Arace Decl. at ¶¶ 1-15 and Ex. 1 attached thereto.) Dr. Carda corrected her testimony in an errata to the deposition. (Carda Decl. at ¶ 10, Ex. 5.) Even before Dr. Carda provided her errata, defense counsel notified Plaintiffs' counsel of this error and provided the relevant policies.[3] (Arbiter Decl. at ¶¶ 7-11.)

Custody staff under Gastelo's supervision did not depart from any policy by not taking the cellophane off of Alexandre's food items in January 2018, because the policy was not in place at that time. (Carda Decl. at ¶¶ 1-10; Arace Decl. at 15 and Ex. 1 at AGO009333; cf AGO009507.) Accordingly, Gastelo does not have supervisory liability for any procedural departure by custody staff under her supervision for assisting in the delivery of meal trays to Alexandre with cellophane-wrapped food items.

///

---

[3] Counsel offered Dr. Carda for further testimony (Arbiter Decl. at ¶ 10), but Plaintiffs did not respond.

## II. PLAINTIFFS ARE NOT ENTITLED TO ANY RELIEF FOR THEIR SURVIVAL ACTION, WHICH IS PREDICATED ENTIRELY ON THEIR FAILED SUPERVISORY LIABILITY CLAIM.

For the reasons discussed in Section I, *supra,* Plaintiffs' Survival Claim, predicated solely on Gastelo's supervisory liability fails.

## III. GASTELO IS ENTITLED TO QUALIFIED IMMUNITY.

### A. Custody Staff Did Not Violate any Policy or Order.

Plaintiffs argue that Gastelo is not entitled to qualified immunity because custody staff under her supervision violated Gastelo's non-discretionary policy precluding provision to Alexandre of cellophane-wrapped food items. (Opp'n at 9:8-17.) The facts are that Gastelo was not responsible for healthcare policies and procedures and that even if custody staff did "deliver" the trays, they "[were] being delivered the way [they were] set up" in accordance with the mental health clinician's directives. (*See* MPR to SUF 35.) This alone is evidence enough for the Court to find Gastelo is entitled to qualified immunity.

The FANS policies and procedures further underscore that there is no genuine factual dispute. The FANS policies and procedures do not bear Gastelo's signature (*see* Arace Decl. at ¶ 15 and Ex. 1 at AGO AGO009530, AGO009648) and make clear that custody staff were not responsible to ensure that the meal trays for Alexandre conformed to clinical orders. (*Id.* at AGO 9302 and 9327.)

### B. It Would Not Be Clear to Similarly Situated Custody Staff that Their Actions Violated Clearly Established Standards.

Even if the Court finds that custody staff did violate Alexandre's constitutional rights, Gastelo is still entitled to qualified immunity. The key question is whether the law at the time of the alleged constitutional violation was clearly established. *Saucier v. Katz* 533 U.S. 194 at 201-202 (2001). The standard is one of fair warning. *Hope v. Pelzer,* 536 U.S. 730, 740 n. 10, (2002).

In *Taylor v. Barkes*, 575 U.S. 822, 826, the Supreme Court ruled that there is no clearly established right to the proper implementation of adequate suicide

1 | prevention protocols.  The state of the law has not substantially changed since the
2 | *Taylor* decision.
3 | In *Wright v. Dunne*, No. 2-15-cv-02671-TLN-CKD, 2020 U.S. Dist. LEXIS
4 | 34582, at *3 (E.D. Cal. Feb. 27, 2020) a supervisory liability claim was dismissed
5 | against a warden based on qualified immunity.  Like Alexandre, the inmate in
6 | *Wright* had a long-documented history of mental illness, had stopped taking his
7 | medication, and had a prior suicide attempt shortly before his successful suicide.
8 | (*Id.*)  Like Plaintiffs' allegations in the case at bar, the allegations against the
9 | warden in *Wright* concerned, *inter alia,* an alleged failure of staff to follow suicide
10 | prevention policies, and a failure to promulgate appropriate policies to prevent
11 | constitutional violations.  (*See id.* at *27.)  Citing *Taylor,* the *Wright* court stated:

> "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. Consequently, Plaintiffs have not established a clearly established right, and therefore, Lizarraga is entitled to qualified immunity.

15 | (*Id.* at *27.)  (Internal citations omitted.)
16 | There is no subsequent case between 2014 (the date of Wright's suicide) that
17 | would give fair warning to every reasonable custody official on or around January
18 | 21, 2018, that providing coverage to nursing staff who delivered meals, or even
19 | delivering meals with cellophane-wrapped food items to MHCB patients—violated
20 | a constitutional right.  Thus, Gastelo is qualifiedly immune.
21 | ///
22 | ///
23 | ///
24 | ///
25 | ///
26 | ///
27 | ///
28 | ///

# CONCLUSION

Based on the foregoing, Gastelo requests that the Court grant her Motion for Summary Judgment and enter judgment against Plaintiffs.

Dated:  September 1, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
CHAD A. STEGEMAN
Supervising Deputy Attorney General

/s/ *Corinna S. Arbiter*
CORINNA S. ARBITER
Deputy Attorney General
*Attorney for Defendant*
*J. Gastelo*

SA2020101463

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant J. Gastelo, certifies that this brief contains 2,603 words, which:

_x_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated         .

Dated:  September 1, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California

/s/*Corinna S. Arbiter*
CORINNA S. ARBITER
Deputy Attorney General
*Attorneys for Defendant J. Gastelo*