UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF ALEXANDRE TOULOUDJIAN, et al.,<br><br>              Plaintiffs,<br><br>   v.<br><br>JOSIE GASTELO, et al.,<br><br>             Defendants. | Case No. 2:20-cv-00520-FLA (KSx)<br><br>**ORDER GRANTING DEFENDANT JOSIE GASTELO'S MOTION FOR SUMMARY JUDGMENT [DKT. 98]**<br><br>Date:      November 17, 2023<br>Time:     1:30 p.m.<br>Courtroom: 6B |

## RULING

On July 7, 2023, Defendant Josie Gastelo ("Defendant" or "Gastelo") filed the subject Motion for Summary Judgment ("Motion"). Dkt. 98 ("Mot."). Plaintiffs The Estate of Alexandre Touloudjian, by and through its administrator, Sarkis Touloudjian, and Sarkis Touloudjian, in his own right, ("Plaintiffs") oppose the Motion. Dkt. 102 ("Opp'n").[1] Defendant's Motion came to hearing on November 17, 2023. Dkt. 122.

---

[1] Plaintiffs did not file a response to Defendant's Statement of Undisputed Facts, as required by Local Rule 56-2 and the court's Initial Standing Order (Dkt. 53) at 9–10. Accordingly, the court considers all facts stated in Defendant's Statement of Undisputed Facts (Dkt. 98-1) as undisputed.

1

For the reasons stated below, the court GRANTS Defendant's Motion in its entirety and ENTERS summary judgment in Defendant's favor.

## BACKGROUND

Plaintiffs filed this civil rights action on January 17, 2020, alleging Gastelo and former Defendants,[2] including the California Department of Corrections and Rehabilitation ("CDCR"), violated decedent Alexandre Touloudjian's ("Decedent") rights by failing to keep him in a safe and secure environment while he was incarcerated at the California Men's Colony ("CMC"). Dkt. 1 ("Compl.") ¶¶ 1–3, 17. Decedent was admitted to the Mental Health Division of the California Correctional Health Care Services ("CCHCS") on January 12, 2018, for suicidal precautions and psychiatric treatment. *Id.* ¶ 18; Dkt. 98-1 (Def. State. Of Uncontroverted Facts, "DSUF") ¶¶ 6–9.

On January 21, 2018 at 1:45 p.m., Decedent was found pulseless and apneic on the floor of his cell by the rounding nurse. DSUF ¶¶ 29–31. The nurse gained access to the cell and initiated life-saving measures, at which time she "pulled a long plastic bag with 'contents [she] could not identify'" from his throat. *Id.* ¶ 31. "Investigative Services Unit officers determined that the objects were state-issued bread wrapped in cellophane." *Id.* After Decedent's breathing and pulse were restored by clinical staff, he was taken to a hospital for further evaluation, where it was determined that he had suffered severe brain damage from a lack of oxygen. *Id.* ¶ 32. Decedent passed away on January 27, 2018. *Id.* Plaintiffs state the cause of death was determined to be respiratory failure, severe anoxic brain injury, and asphyxia. Compl. ¶ 35.

Plaintiffs filed the operative Corrected Third Amended Complaint ("TAC") on July 8, 2021, asserting three causes of action against Gastelo for: (1) supervisory liability under 42 U.S.C. § 1983 ("Section 1983"); (2) violation of the 8th and 14th

---

[2] All other individuals and entities originally named as Defendants have been dismissed from the action. Dkts. 21, 64.

2

Amendments for deliberate indifference to serious medical need; and (3) a survival action. Dkt. 59 ("TAC") ¶¶ 42–93. Defendant Gastelo filed a Motion to Dismiss the TAC (Dkt. 56), which the court granted in part as to the second cause of action for deliberate indifference and Plaintiff's supervisory claim for failure to implement "inmate welfare policies," train staff members to abide by those policies, and reprimand or terminate staff members who failed to abide by those policies. Dkt. 68 at 18. The Motion to Dismiss was otherwise denied. *Id.* at 18. Plaintiffs' only remaining claims against Gastelo are a claim for supervisory liability and a survivor claim, based on Gastelo's alleged deliberate indifference to acts by staff under her supervision related to Decedent's care. *Id.* at 9–11.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–49. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be

granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law. *Id.* The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party." *Id.* at 630–31. However, a party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

## II. Analysis

"To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), *as amended May 11, 1990, overruled on unrelated grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007).

"[A]n inadvertent failure to provide adequate medical care" is insufficient to establish a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. To state a cognizable claim, a prisoner must establish defendants committed "acts or omissions sufficiently harmful to

1  evidence deliberate indifference to serious medical needs." *Id*. "It is only such
2  indifference that can offend 'evolving standards of decency' in violation of the Eighth
3  Amendment." *Id*. "A heightened suicide risk or an attempted suicide is a serious
4  medical need." *Conn v. City of Reno*, 591 F.3d 1081, 1095 (9th Cir. 2010), *vacated by*
5  *City of Reno v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part by Conn v. City*
6  *of Reno*, 658 F.3d 897 (9th Cir. 2011).

7      "A supervisory official is liable under § 1983, so long as 'there exists either (1)
8  his or her personal involvement in the constitutional deprivation, or (2) a sufficient
9  causal connection between the supervisor's wrongful conduct and the constitutional
10 violation.'" *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018)
11 (citations omitted). "'The requisite causal connection can be established … by setting
12 in motion a series of acts by others or by knowingly refusing to terminate a series of
13 acts by others, which the supervisor knew or reasonably should have known would
14 cause others to inflict a constitutional injury.'" *Id.* (brackets and citation omitted).
15 "Thus, a supervisor may 'be liable in his individual capacity for his own culpable
16 action or inaction in the training, supervision, or control of his subordinates; for his
17 acquiescence in the constitutional deprivation; or for conduct that showed a reckless
18 or callous indifference to the rights of others.'" *Id.* (citation omitted). "[A]n
19 individual's 'general responsibility for supervising the operations of a prison is
20 insufficient to establish personal involvement.'" *Wesley v. Davis*, 333 F. Supp. 2d
21 888, 892 (C.D. Cal. 2004).

22     Accordingly, to state a supervisory claim against Gastelo, Plaintiffs must
23 establish: (1) officials under Gastelo's supervision exhibited deliberate indifference to
24 Decedent's medical needs; and (2) a sufficient causal connection between Gastelo's
25 conduct and the acts or omissions by individuals under Gastelo's supervision that
26 evidenced deliberate indifference to Decedent's heightened risk of suicide. *See*
27 *Rodriguez*, 891 F.3d at 798; *Estelle*, 429 U.S. at 106.
28 / / /

5

Defendant moves for summary judgment on the grounds that she never obtained reports or information regarding Decedent's mental health and risk of suicide, did not have direct involvement in providing for mental health treatment or suicide prevention for inmates at CMC, and had no supervisory responsibilities for the clinical staff at CMC. Mot. at 8–9, 12–15. Gastelo attests she had no supervisory responsibilities for the California Correctional Institute ("CCI"), where Decedent was originally housed, and did not receive reports regarding Decedent or his conduct at that facility or the mental health treatment he received prior to his transfer to CMC on January 12, 2018. DSUF ¶¶ 9–11, 15–17. According to Gastelo, she also was not included in communications between the clinical staffs at CCI and CMC or informed of Decedent's prior suicide attempt at CCI because of CDCR and CMC's policies and laws regarding the privacy of inmate mental health records. *Id.* ¶¶ 14–16.

Gastelo further attests that, as warden of CMC, she supervised custody staff only and had no supervisory role over the clinical staff, who worked under the supervision of the Chief Executive Officer for Health Care Services ("Health Care CEO") at CMC. *Id.* ¶ 13. According to Gastelo, the clinical staff assessed Decedent's mental health, created his treatment plan, ordered medication for his schizophrenia, and ordered and implemented individual suicide prevention measures for Decedent. *Id.* ¶¶ 18–20. The custody staff were not involved in creating Decedent's mental health treatment plan, which included a suicide evaluation and suicide prevention measures, nor did they ever access or modify orders regarding his mental health or suicide prevention measures while he was at CMC. *Id.* ¶¶ 21–22. The custodial staff also were not responsible for and did not perform suicide precaution rounds on Decedent. *Id.* ¶ 22. Although custody staff provided coverage to medical or clinical staff who delivered meals and medication to inmates in the MHCB, custody staff did not plan or prepare meals for inmates or supervise inmates in taking medication. *Id.* ¶ 23. Meals for Decedent and other inmates in the MHCB unit were prepared by kitchen staff who reported to the Health Care CEO. *Id.* ¶ 33.

The undisputed evidence in the record is sufficient for Gastelo to meet her initial burden to demonstrate she did not supervise anyone who was responsible for Decedent's medical care or implementing suicide prevention measures, and that there was no causal connection between her conduct and the clinical staff's potential failure to prevent Decedent's injuries.

Plaintiffs respond Gastelo cannot be absolved from liability because the manner in which inmates are housed in the institution, the guards responsible for managing and monitoring mental health inmates, and food service for inmates all fall under her supervisory umbrella as the Warden. Opp'n at 1–2. The court disagrees. It is undisputed Decedent's meals were prepared by kitchen staff who reported to the Health Care CEO—not Gastelo. DSUF ¶¶ 13, 33. Plaintiffs do not present any evidence to establish Gastelo had direct supervisory responsibility for any staff responsible for managing and providing Decedent's mental health care or implementing suicide prevention measures, or that the custodial staff (who Gastelo supervised) had any such responsibilities. *See* Opp'n. Gastelo's general responsibility for supervising the operations of CMC is insufficient to establish her personal involvement in or a sufficient causal connection to the clinical staff's alleged failure to prevent Decedent's suicide. *See Wesley*, 333 F. Supp. 2d at 892.

At the hearing, Plaintiffs argued Gastelo was liable because the person who allowed the food to be placed in the cell was a custodial staff member. Plaintiffs, however, did not identify any policy or practice that would have allowed a custodial staff member to review, question, or reject food ordered for inmates by the clinical staff or prepared by their associated kitchen staff. As the food was prepared by kitchen staff in compliance with orders given by clinical staff, all of whom reported to the Health Care CEO, the mere fact that the food was delivered to Decedent by custodial staff is insufficient to establish (1) any officials under *Gastelo's* supervision exhibited deliberate indifference to Decedent's medical needs or (2) the existence of a sufficient causal connection between *Gastelo's* conduct and any acts or omissions by

individuals under *Gastelo's* supervision that evidenced deliberate indifference to Decedent's heightened risk of suicide. *See Rodriguez*, 891 F.3d at 798. Plaintiffs' assertion that "[i]t was the custody staff's responsibility to review the contents of the food tray to ensure that it was in compliance with all safety protocols in place before providing it to the inmate" (Opp'n at 4) is unsupported by any evidence and insufficient to create a genuine dispute of material fact. Accordingly, Plaintiffs' contention that Decedent should not have been provided with cellophane with his food delivery is insufficient to establish *Gastelo* had personal involvement in or a causal connection to the constitutional violation alleged.

The court, therefore, finds Defendant meets her burden to demonstrate she is entitled to summary judgment on Plaintiffs' remaining supervisory liability claims, while Plaintiffs fail to meet their responsive burden to establish the existence of a genuine dispute of material fact. *See Rodriguez*, 891 F.3d at 798. As Plaintiffs have failed to establish a predicate constitutional violation by Gastelo, Plaintiffs' survival action also fails. *See Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994) ("In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained.").

## CONCLUSION

For the aforementioned reasons, the court GRANTS Defendant's Motion for Summary Judgment in its entirety and ENTERS summary judgment in Gastelo's favor. Defendant's request for judicial notice (Dkt. 98-2) is DENIED as moot. Defendant shall file a proposed Judgment within seven (7) days of this Order.

IT IS SO ORDERED.

Dated: December 12, 2023

FERNANDO L. AENLLE-ROCHA
United States District Judge